Jasmyne and Patrick BOBBITT, Jr., by their next friends Alisa and Patrick BOBBITT, Sr., and Alisa and Patrick Bobbitt, Sr., Jason Brown, by his next friend, Ledell Brown, Jareem Chavis, by his next friend, Eva Chavis, Keyonda and Timesha Mangum, by their next friend, Aretha Mangum, Lakeisha McLean, by her next friend, Alesia McLean, Diane McDougal, Jessica Utley, by her next friend, Dorise Utley, and Clay Hallman, Derrick Miller, and Christopher Williams, Plaintiffs,

v.

RAGE INC., Mid–Atlantic Pizza Huts, Inc., and Pizza Hut of Hickory No. 2, Inc., Defendants.

No. 5:98CV19.

United States District Court, W.D. North Carolina, Statesville Division.

July 27, 1998.

James E. Ferguson, III, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, Lynn Fontana, Fontana & Lanier, P.A., Durham, NC, Robinson & Lawing, L.L.P., Winston–Salem, NC, for Plaintiffs.

Robinson & Lawing, L.L.P., Winston–Salem, J. Gray Robinson, Norwood Robinson, Winston–Salem, for Defendants.

## ORDER

McKNIGHT, United States Magistrate Judge.

**This matter** is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for entry of an Order on Defendant's Motion to Dismiss.

## I.  Factual and Procedural Background

There are two groups of Plaintiffs in this action.[1] The "Hickory Plaintiffs" consist of Clay Hallman, Derrick Miller, and Christopher Williams. (Complaint ¶¶ 8–10.) All the Plaintiffs are African–American except for Clay Hallman. The "Cary Plaintiffs" consist of Jasmyne Bobbitt and Patrick Bobbitt, Jr., minors whose claims are brought by their parents, Alisa and Patrick Bobbitt, Sr.; Alisa Bobbitt and Patrick Bobbitt, Sr.; Jason Brown, a minor whose claim is brought by his father, Ledell Brown; Jareem Chavis, a minor whose claim is brought by his mother, Eva Chavis; Keyonda Mangum and Timesha Mangum, minors whose claims are brought by their mother, Linda Mangum; Tierra Mangum, a minor whose claim is brought by her mother, Aretha Mangum; LaKeisha McLean, a minor whose claim is brought by her mother, Alesia McLean; Alesia McLean; and Diane McDougal. (Complaint ¶¶ 1–7.)

### A.  The Hickory Plaintiffs

On March 3, 1995, at approximately 2:30 p.m., the Hickory Plaintiffs entered a Pizza Hut restaurant located in Hickory, North Carolina, owned and operated by Defendants. They used the restroom, were seated, were brought glasses of tea, and placed their orders. While waiting approximately thirty to forty minutes for their order, they observed a white teenager enter the restaurant, place and receive an order of food. (Complaint ¶¶ 37–39.)

Two police officers, accompanied by the restaurant manager who summoned them, approached the group. One officer told them that, according to the manager, three African–American teenagers had run out without paying the day before. Consequently, the Hickory Plaintiffs must prepay for their food. The group prepaid, and was served its food. (Complaint ¶¶ 40, 41.)

### B.  The Cary Plaintiffs

On November 23, 1996, at approximately 3:00 p.m., the Cary Plaintiffs entered a Pizza Hut restaurant located in Cary, North Carolina, owned and operated by Defendants. The group of thirteen waited ten to twelve minutes to be seated. A waitress named Carla approached them, and after determining their number, pushed tables together for the party. Carla then returned to the kitchen without saying any more to them. After standing and waiting a few more minutes, they seated themselves at the tables. (Complaint ¶¶ 19, 20.)

After being seated, the group waited ten to fifteen minutes without menus before retrieving menus themselves. The group observed that white customers had entered the Pizza

---

**1.** For the purposes of this order, the facts set out in Plaintiffs' Complaint are to be taken as true. *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 715, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). They are thus the basis of this Factual and Procedural Background section.

Hut, been seated, and had their orders taken. (Complaint ¶¶ 21–23.)

The group was approached by another restaurant employee, one Muhammad Ali, who took their order. Ali apologized to the group for the long wait, and, referring to the other staff at the restaurant, stated that it was "their belief to act this way." At the time the group's order was taken, they observed that white customers who had entered the restaurant after them had already been served their food. (Complaint ¶¶ 24, 25.)

When the group finally received their order, they noticed that the pizza had insufficient sauce on it and complained to a waitress. The waitress "initially ignored them," but then brought out the assistant manager to field the complaint. In his effort to demonstrate the sufficiency of the sauce, the assistant manager used his fingers to pull back a layer of cheese. (Complaint ¶ 26.)

### C. Procedural Background

On March 2, 1998, the two groups of Plaintiffs jointly filed this complaint alleging violations of 42 U.S.C. § 1981 and 42 U.S.C. § 2000a.[2] On May 8, 1998, Defendants filed a motion to dismiss. Plaintiffs have responded and Defendants have replied, rendering the motion to dismiss ripe for disposition.

### II. The Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is solely for the purpose of testing the formal sufficiency of the statement of the claim for relief. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 294 (2d ed.1983). The rule must be read in

---

**2.** Although Plaintiffs include in their complaint a section entitled "SECOND CLAIM FOR RELIEF, 42 U.S.C. § 2000a," Plaintiffs never actually allege a violation of the statute. In that section, Plaintiffs allege the following:

51. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 50, as if set forth fully herein.

52. The Pizza Hut restaurants in Cary and Hickory, North Carolina, owned and operated by Defendants, are places of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(2).

53. The operations of the Pizza Hut restaurants in Cary and Hickory, North Carolina

conjunction with Rule 8(a), which sets forth the requirements for pleading a claim in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. *O'Hare Truck Serv., Inc. v. City of Northlake,* 518 U.S. 712, 715, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).

The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings for failure to state a claim." *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1125 (10th Cir.1994) (citations omitted). A pleading should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nor should a complaint be dismissed on the ground that the court doubts whether the plaintiff will ultimately prevail in the action. Charles A. Wright & Arthur R. Miller, § 1357, at 340. Such an inquiry is a matter properly determined on the basis of the proof and not merely on the pleadings. *Id.* at 341.

### III. The Section 1981 Claims

#### A. The Section 1981 Standard

Title 42, section 1981, of the United States Code states in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens

---

owned and operated by Defendants, "affect commerce" within the meaning of 42 U.S.C. § 2000a.

(Complaint ¶¶ 51–53.) Nowhere do Plaintiffs allege that Defendants violated the statute.

Nevertheless, from the above cited paragraphs, the language of the preceding heading, and paragraphs 32 and 45 ("defendants ... violated plaintiffs' right to the full and equal enjoyment of the public accommodations operated by Defendants"), the undersigned understands that violations of section 2000a are alleged in the Complaint, and recognizes such allegations.

. . . .

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a), (b). The aim of the statute is to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace. *Patterson v. McLean Credit Union*, 491 U.S. 164, 190, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The right given by the statute extends not only to interactions between citizens and government, but to private dealings as well. *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

In *Patterson*, the Supreme Court held that section 1981 prohibited discrimination in the formation of an employment contract but did not apply to "problems that may arise later from the conditions of continuing employment," that is, in the contractual relationship. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1054 (8th Cir.1997) (quoting *Patterson*, 491 U.S. at 176–77, 109 S.Ct. 2363). Two years after *Patterson*, Congress enacted the Civil Rights Act of 1991, which, by the addition of subsection (b) to section 1981, overruled *Patterson's* limited interpretation of the section. *Id.; see also Beardsley v. Webb and Isom*, 30 F.3d 524, 527 (4th Cir.1994). In subsection (b) Congress redefined the term "make and enforce contracts" specifically to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Litigation involving section 1981 most commonly involves the right to make and enforce employment contracts. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996) (citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)). Claims involving retail transactions have been relatively infrequent. *Id.* Of those that have been pursued, the majority have been for conduct which prevented the formation of the contract, as opposed to conduct which affected the nature or quality of the contractual relationship. *Id.*

■ To prevail under a section 1981 claim, the plaintiff must prove a prima facie case of intentional discrimination. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The plaintiff may establish a prima facie case by direct evidence, or, more commonly, by circumstantial evidence of discriminatory motive. *Harrington v. Harris*, 108 F.3d 598, 606 (5th Cir.1997).

■ The burden shifting evidentiary framework established for Title VII claims also applies to section 1981 claims. *See Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1136 (4th Cir.1988); *Gairola v. Com. of Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir.1985). Under the *McDonnell Douglas* evidentiary framework, there are three stages of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case of discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Then the burden shifts to the defendant to produce evidence that shows some legitimate, nondiscriminatory reason for its action. *Id.* at 253, 101 S.Ct. 1089. If the defendant meets this burden, the burden then shifts back to the plaintiff to show that the reason proffered by the defendant was false and that race was the real reason for the adverse action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514–15, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ However, for the more limited purpose of surviving a motion to dismiss in a discrimination claim, a plaintiff need only allege facts sufficient to state a claim regarding its prima facie case. *See Rutland v. Office of Atty. Gen., State of Miss.*, 851 F.Supp. 793, 798 (S.D.Miss.1994). The proof required to make the prima facie case required by *McDonnell Douglas* varies depending on the claims and facts asserted. *See Shapolia v. Los Alamos Nat'l Laboratory*, 992 F.2d 1033, 1037 (10th Cir.1993). Even within the subcategory of section 1981 claims, the required prima facie case varies

depending on the type of contract involved and the adverse action alleged. *See Alvarado v. Board of Trustees of Montgomery Community College*, 928 F.2d 118, 121 (4th Cir. 1991) (failure to hire); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995) (failure to promote); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234–35 (4th Cir.1991) (failure to give merit pay raise); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993) (disparate punishment within the workplace); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992) (failure to renew contract).

■ The Second, Fifth, Seventh, and Eleventh Circuits have approved a more general exposition of the section 1981 prima facie case. To establish a section 1981 claim,

> the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute; in this case, the making and enforcing of a contract.

*Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir.1997). *See also Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir.1994);

*Mian v. Donaldson, Lufkin, & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2nd Cir. 1993), *cert. denied*, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *Baker v. McDonald's Corp.*, 686·F.Supp. 1474, 1481 (S.D.Fla.1987), *aff'd* 865 F.2d 1272 (11th Cir.1988), *cert. denied*, 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). Such a generalized version is useful in cases, like the one under consideration here, where the facts do not conform to any of the more common situations cited in the paragraph above.[3]

**B. Analysis of Cary Plaintiffs' Section 1981 Claim**

In furtherance of the analysis of the claims of both groups, the undersigned will explore the claims of the Cary Plaintiffs first, then the claims of the Hickory Plaintiffs.

■ The Cary Plaintiffs allege that the Defendants, through their employees, "refused to serve, or otherwise denied plaintiffs food because of their race," in violation of section 1981. (Complaint ¶ 30.)[4]

Although the Cary Plaintiffs allege that they were refused service and denied food, they admit in their Complaint that (1) they were seated,[5] (2) their orders were taken,[6]

---

**3.** The undersigned has found no Fourth Circuit opinion expressing approval or disapproval of the *Bellows* statement of a plaintiff's necessary showing.

**4.** In their Complaint, the Cary Plaintiffs state:

> 30. On November 23, 1996, Defendants, acting through their employees, agents and/or representatives, refused to serve, or otherwise denied plaintiffs food because of their race. Defendants' actions on November 23, 199[6], were taken with racially discriminatory animus for the purpose of denying plaintiffs equal treatment on the basis of race.
> 32. The conduct complained of by defendants and their employees, agents and/or representatives as described above denied plaintiffs the right to make and enforce contracts on the same basis as whites....
> 29. At all times relevant to the events described above, the waitress, Carla, the manager or assistant manager who put his fingers in the pizza and Muhammad Ali were all acting within the course and scope of their employment as employees, agents and/or representatives of Defendants.
> 31. The discriminatory practices described above were carried out (a) under the defendants' authority, control and supervision; and/or (b) within the scope of the employees'

employment. In addition, Defendants ratified the conduct of the waitress Carla because (a) Carla's manager was on notice that Carla did not like to serve black people, and/or (b) Defendants were aware of the unlawful conduct of the manager in the Hickory, North Carolina, Pizza Hut, and on March 3, 1995 and (c) Defendants failed to take remedial measures to educate, train or discipline its employees to prevent this incident from happening.
(Complaint ¶¶ 29–32.)

**5.** In their Complaint, the Cary Plaintiffs state:

> 20. A waitress named Carla finally approached the church group and asked them how many were in their party. When they told her 13, she rudely walked away and started pulling tables together. When she finished, instead of returning and notifying the group that the tables were ready, she simply walked off. The group waited a few minutes to see if she was coming back, then walked over to the tables and seated themselves.
(Complaint ¶ 20.)

**6.** In their Complaint, the Cary Plaintiffs state:

> 24. A Pizza Hut employee, who identified himself as Muhammad Ali, finally came to take the church group's order....

and (3) they in fact received their food.[7] What remains are allegations of poor service with racially discriminatory animus. The Cary Plaintiffs allege a violation of section 1981 based upon their ten- to twelve-minute wait to be seated; the discourteous way in which their waitress seated them; the fact that their ten to fifteen minute wait to receive menus and to order was longer than that of white patrons; and the assistant manager's touching of their pizza with his fingers.

In *Morris v. Office Max, Inc.*, two African-American men entered a retail store, made purchases, and continued shopping. *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). The management, fearing the possibility of shoplifting, summoned the police to the store. *Id.* at 411–12. After interrogating the men, the police apologized and left. *Id.* In the ensuing section 1981 claim, the court found that the plaintiff shoppers could not establish the third element of the prima facie case for a violation of section 1981. They were denied neither admittance nor service, nor were they asked to leave. Further, they successfully made purchases. Whatever the legal consequences of the management's conduct, the court found no violation of section 1981. *Id.* at 414. The court stated that "[a] claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest. . . ." *Id.*

The legally significant facts of the instant case are analogous to those in *Morris*. The Cary Plaintiffs were denied neither admittance to the restaurant nor service, nor were they asked to leave at any time. Further, they were able to place their order and receive their dinner.

(Complaint ¶ 24.)

Taking all the Cary Plaintiffs' factual allegations as true, the undersigned finds that those allegations fail to state a claim with respect to the third prong of the *Bellows* prima facie case, that the alleged discrimination concerned the making and enforcing of a contract. *Bellows*, 118 F.3d at 274. This is so even under the expanded definition of the phrase "to make and enforce contracts" added by the 1991 amendment to section 1981. "While inconvenient, frustrating and all too common, the mere fact of slow service in a fast-food restaurant does not in the eyes of this Court, rise to the level of violating one's civil rights." *Robertson v. Burger King, Inc.*, 848 F.Supp. 78, 81 (E.D.La.1994). There may be some level of bad service that would suffice to satisfy the third prong of the section 1981 prima facie case notwithstanding the successful completion of a sales contract. If such a level of service does exist, it has not been pled in the instant case. Therefore, Defendants' Motion to Dismiss with respect to the Cary Plaintiffs' section 1981 claim should be granted.[8]

### C. Analysis of Hickory Plaintiffs' Section 1981 Claim

■ The Hickory Plaintiffs also allege poor service in their visit to a Pizza Hut restaurant owned and operated by Defendants. They allege that after they were promptly seated and their orders were taken, they waited thirty to forty minutes for the arrival of their food, during which time they observed a white teenager arrive, place an order, and receive his food.[9]

But unlike the Cary Plaintiffs, the Hickory Plaintiffs allege something more than poor service. Their long wait was punctuated by

---

7. In their Complaint, the Cary Plaintiffs state:
   26. . . . When their pizza finally arrived, there was very little sauce, if any, on it. . . .
   (Complaint ¶ 26.)

8. Due to the Cary Plaintiffs' failure to state a claim as regards the third prong of the prima facie case, the undersigned need not address the first two prongs, membership in a racial minority, and intentional racial discrimination by Defendants.

9. In their Complaint, the Hickory Plaintiffs state:
   38. Williams, Miller, Hallman, and Coates entered the Pizza Hut and went to wash up in the bathroom. They were then seated by a white waitress who offered them tea and took their orders.
   39. Williams, Miller, Hallman, and Coates sat and waited for their food for 30 to 40 minutes. While the group waited, a white teenager came into the Pizza Hut, placed and received a take out order, and left.
   (Complaint ¶¶ 38, 39.)

the arrival of police officers who, along with the manager of the restaurant, informed them that because three African–American teenagers had left without paying the day before, that they would have to prepay for their order.[10]

The undersigned found no Fourth Circuit opinion arising out of a completed sales contract in which an essential term was altered by a defendant on the basis of a plaintiff's race, and will apply *Bellows*.

The Hickory Plaintiffs allege that the Defendants "refused to serve, or otherwise denied, plaintiffs food because of their race," in violation of section 1981, rendering Defendants liable.[11] (Complaint ¶ 43.)

Although the Hickory Plaintiffs allege that the restaurant refused to serve them, they admit in their allegations that in fact the restaurant did seat them, take their order,[12] and serve them their food.[13] In this respect, their allegations are analogous to those of the Cary Plaintiffs. Echoing the undersigned's conclusion as regards the Cary Plaintiffs' section 1981 claim, the Hickory Plaintiffs' factual allegations of bad service, taken alone, do not satisfy the third prong of the *Bellows* prima facie case of a section 1981

violation, i.e., discrimination in the making and enforcing of a contract. Therefore, if the Hickory Pizza Hut manager's alleged conduct constitutes any violation of the section 1981 right to make and enforce contracts, the violation must be found within the 1991 amendment to the section: subsection (b). This provision guarantees the Plaintiffs the right to enjoy "all benefits, privileges, terms, and conditions of the contractual relationship" in the same manner as are enjoyed by white citizens. 42 U.S.C. § 1981(b).

When the manager, through the police, allegedly required the Hickory Plaintiffs to prepay, he changed an essential term of the customer/restaurateur contract because of race. In making them prepay, the manager triggered subsection (b) of the statute. The Plaintiffs were denied the "enjoyment of all . . . *terms* and *conditions* of the contractual relationship" that were enjoyed by white citizens patronizing the restaurant. 42 U.S.C. § 1981(b) (emphasis added).

These facts are unlike those alleged by the Cary Plaintiffs. There, the Plaintiffs merely allege poor service. While this experience is regrettable and frustrating, it is a phenome-

---

**10.** In their Complaint, the Hickory Plaintiffs state:

40. Two police officers arrived at the Pizza Hut and came to the table along with a white male employee of Pizza Hut who was wearing a tag that identified him as the "Manager." One of the police officers stated that the plaintiffs would have to pay before they ate because the Pizza Hut manager stated three young black teenagers had run out without paying the day before.

(Complaint ¶ 40.)

**11.** In their Complaint, the Hickory Plaintiffs state:

42. The motivation of the Pizza Hut manager in calling the police and in making Williams, Miller, and Hallman pay before getting their pizza was the race of Williams, Miller and Coates.

43. On March 3, 1995, defendants, acting through their employees, agents and/or representatives, refused to serve, or otherwise denied, plaintiffs food because of their race. Defendants' actions on March 3, 1995, were undertaken with racially discriminatory animus for the purpose of denying plaintiffs equal treatment on the basis of race, or in the case of Plaintiff Hallman, on the basis of his association with African–American customers.

45. The conduct complained of by defendants and their employees, agents and/or representatives as described above denied plaintiffs the right to make and enforce contracts on the same basis as whites. . . .

44. The discriminatory practices described above were carried out (a) under the defendants' authority, control and supervision; and/or (b) within the scope of the employees' employment.

(Complaint ¶¶ 42–45.)

**12.** In their Complaint, the Hickory Plaintiffs state:

38. Williams, Miller, Hallman, and Coates entered the Pizza Hut and went to wash up in the bathroom. They were then seated by a white waitress who offered them tea and took their orders.

(Complaint ¶ 38.)

**13.** In their Complaint, the Hickory Plaintiffs state:

41. When the plaintiffs asked the manager why he had called the police, he responded that he "feared for their lives." Plaintiffs were embarrassed and humiliated, and paid the manager, who then started to fix their pizza.

(Complaint ¶ 41.)

non familiar to all who eat at restaurants. The allegations of the Hickory Plaintiffs go beyond poor service. The Pizza Hut manager altered a fundamental characteristic of the service provided by the public accommodation solely on the basis of race. It is this factual distinction which makes the Cary Plaintiffs unable to satisfy the third prong of the *Bellows* prima facie case, while enabling the Hickory Plaintiffs to do so.

As to the second prong of the *Bellows* prima facie case, the Hickory Plaintiffs' allegations must be sufficient to state a claim that the Pizza Hut manager had an intent to discriminate on the basis of race. The undersigned concludes that the alleged statement by the police officer, that the Hickory Plaintiffs "would have to pay before they ate because the Pizza Hut manager stated three young black teenagers had run out without paying the day before," sufficiently states a claim that the manager intended to treat the Hickory Plaintiffs differently on the basis of race.

Considering the first prong of the *Bellows* prima facie case, the Plaintiffs are not all members of a racial minority. Of the four present at the restaurant, only three, Hallman, Miller and Williams, are Plaintiffs in this lawsuit. Of those three, Miller and Williams are alleged to be African–American in the Complaint. The Complaint states only that Hallman is a "non–African–American."

■ Hallman has standing. Section 1981 prohibits discrimination against non-minority individuals because they associate with African–Americans. *See Fiedler v. Marumsco Christian Sch.,* 631 F.2d 1144, 1149 (4th Cir. 1980) (suit allowed under section 1981 where Caucasian student was expelled from private sectarian school for relationship with African–American student) (citing *Faraca v. Clements,* 506 F.2d 956 (5th Cir.), *cert. denied,* 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669, (1975) (claim that Caucasian teacher was denied a job because he was married to an African–American woman allowed under section 1981)). Therefore, all the Hickory Plaintiffs allege facts sufficient to state a claim regarding the first prong of the prima facie case. The undersigned finds that the group alleges sufficient facts to state

a claim of a section 1981 violation against the Pizza Hut manager.

■ The doctrine of respondeat superior is applicable to section 1981 claims. *Springer v. Seaman,* 821 F.2d 871, 881 (1st Cir. 1987). An employer may be responsible only " 'for those intentional wrongs of his employees that are committed in furtherance of the employment; the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong.' " *Fitzgerald v. Mountain States Tel. and Tel. Co.,* 68 F.3d 1257, 1262–63 (10th Cir.1995) (quoting *Hunter v. Allis–Chalmers Corp. Engine Div.,* 797 F.2d 1417, 1421–22 (7th Cir.1986)). The undersigned finds that the Hickory Plaintiffs' allegations sufficiently state a claim that the manager's discrimination against them was intentional. Since the manager's actions seem designed to prevent stealing from the business they are properly deemed "doing the employer's business."

■ An employer is liable under section 1981 only " 'where the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy.' " *EEOC v. Gaddis,* 733 F.2d 1373, 1380 (10th Cir. 1984) (quoting *Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979)); *see also People of State of N.Y. by Abrams v. Ocean Club, Inc.,* 602 F.Supp. 489, 494 (E.D.N.Y. 1984) (discriminatory act of club manager, who had full and complete authority to make decisions for club that related to day-to-day management of club and had duty and authority to enforce all rules and regulations of club, was act of club itself as a matter of law). The Hickory Plaintiffs allege that the individual who discriminated against them on the basis of race was the manager of the Pizza Hut. (Complaint ¶ 40, *supra,* n. 9.) This allegation, in conjunction with the foregoing allegations concerning Defendants' respondeat superior liability suffice to state a claim under section 1981.

Taking the Plaintiffs' factual allegations as true, the Defendants' Motion to Dismiss with

respect to the Hickory Plaintiffs' section 1981 claim should be denied.

## IV. The Section 2000a Claims

### A. The Section 2000a Standard

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, states in pertinent part that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or natural origin." 42 U.S.C. § 2000a(a). The section goes on to state that any restaurant "is a place of public accommodation within the meaning of this subchapter if its operations affect commerce. . . ." 42 U.S.C. § 2000a(b). A restaurant "affects commerce" if "it serves or offers to serve interstate travelers or a substantial portion of the food which it serves . . . has moved in commerce. . . ." 42 U.S.C. § 2000a(c). "Commerce" is defined as, but is not limited to, the following: "travel, trade, traffic, commerce, transportation, or communication among the several states. . . ." 42 U.S.C. § 2000a(c); *see Katzenbach v. McClung,* 379 U.S. 294, 299–301, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); *Wooten v. Moore,* 400 F.2d 239, 241–42 (4th Cir.1968) *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776.

Title 42, section 2000a–2 of the United States Code states in pertinent part that "[n]o person shall . . . withhold [or] deny . . . any person of any right or privilege secured by section 2000a." 42 U.S.C. § 2000a–2. Section 2000a–3 of that title states in pertinent part that "[w]henever any person has engaged . . . in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventative relief, including an application for a permanent or temporary injunc-

tion, restraining order, or other order, may be instituted by the person aggrieved. . . ." 42 U.S.C. § 2000a–3. *See Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (a plaintiff in a section 2000a case may not recover damages, but solely injunctive relief).

■■■ Therefore, if the defendant is a restaurateur, the plaintiff, in order to state a claim for which relief may be granted, must allege that (1) the restaurant affects commerce, (2) the restaurant is a public accommodation, and (3) the restaurateur denied plaintiff full and equal enjoyment of the restaurant. *See* 42 U.S.C. § 2000a; *Wooten,* 400 F.2d at 241; *United States v. DeRosier,* 473 F.2d 749 (5th Cir.1973).

### B. Analysis of Cary Plaintiffs' Section 2000a Claim

■■■ The Cary Plaintiffs sufficiently allege both that the restaurant affects commerce and is a place of public accommodation.[14] Though factual allegations in support of these claims are scarce in the Complaint, few are needed. The application of section 2000a to restaurants is well settled in Supreme Court jurisprudence, even when the link between a particular restaurant and interstate commerce is tenuous. *See Katzenbach,* 379 U.S. at 299–301, 85 S.Ct. 377; *Newman v. Piggie Park Enters., Inc.,* 377 F.2d 433, 436 (4th Cir.1967), *aff'd,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)

It is in the third prong of the necessary showing that the Cary Plaintiffs fall short. They allege that through the conduct of the employees of Pizza Hut, the Defendants "violated plaintiffs' right to the full and equal enjoyment of the public accommodations owned and operated by Defendants." (Complaint ¶ 32.)[15] However, for the same rea-

---

14. In their Complaint, the Cary Plaintiffs state:
   53. The operations of the Pizza Hut restaurants in Cary and Hickory, North Carolina, owned and operated by Defendants, "affect commerce" within the meaning of 42 U.S.C. § 2000a.
   52. The Pizza Hut restaurants in Cary and Hickory, North Carolina, owned and operated by Defendants, are places of public accommodation within the meaning of 42 U.S.C. § 2000a(b)(2).

(Complaint ¶¶ 52, 53.)

15. In their Complaint, the Cary Plaintiffs state:
   32. The conduct complained of by defendants and their employees, agents and/or representatives as described above . . . violated plaintiffs' right to the full and equal enjoyment of the public accommodations owned and operated by Defendants.
   (Complaint ¶ 32.)

sons that the conduct of the Cary Pizza Hut employees does not violate section 1981, neither does it violate section 2000a. The Cary Plaintiffs were not denied access to the restaurant, were not denied service, were never asked to leave, and in fact successfully ordered and received their dinner. (*See* Complaint ¶¶ 20, 24, 26, *supra,* nn. 4–6.) Again, there may be some level of bad service that would suffice to satisfy the third prong of the section 2000a prima facie case, but it is not reached by these facts. Therefore, Defendants' Motion to Dismiss with respect to the Cary Plaintiffs' section 2000a claim should be granted.

### C. Analysis of Hickory Plaintiffs' Section 2000a Claim

██ The Hickory Plaintiffs make allegations identical to those made by the Cary Plaintiffs regarding whether the Pizza Hut restaurants in question affect commerce and are places of public accommodation. (*See* Complaint ¶¶ 52, 53, *supra* n. 15.) As stated in the discussion above, the undersigned finds the allegations sufficient to state a claim regarding the first two prongs of a section 2000a claim.

Regarding the third prong, the Hickory Plaintiffs allege that through the conduct of the Pizza Hut employees, the Defendants "violated plaintiffs' right to the full and equal enjoyment of the public accommodations owned and operated by Defendants." (Complaint ¶ 45.) [16] The Complaint alleges that, solely on the basis of the race of the Hickory Plaintiffs, the manager of the restaurant altered the service provided by the establishment, requiring them to prepay for their dinner.

The undersigned found no Fourth Circuit opinion addressing a section 2000a claim wherein a proprietor of a public accommodation allowed plaintiffs access, but denied their

right to "full and equal enjoyment" in such a fundamental fashion.

The very purpose of section 2000a is " 'to eliminate the unfairness, humiliation, and insult of racial discrimination in facilities which purport to serve the general public.' " *Rousseve v. Shape Spa for Health and Beauty, Inc.,* 516 F.2d 64, 67 (5th Cir.1975) (quoting H.R.Rep. No. 88–914, at 235 (1964), U.S. Code Cong. & Admin.News 2391). Being singled out by the management of a restaurant and, on the basis of race, made to prepay for one's dinner when the normal practice is to pay after the meal, violates that customer's right to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations" of that establishment.[17] 42 U.S.C. § 2000a.

Accordingly, the undersigned concludes that the allegations of the Hickory Plaintiffs are sufficient to satisfy the third prong of the section 2000a prima facie case, and thus that these Plaintiffs successfully state a claim regarding section 2000a. Defendants' Motion to Dismiss as regards the Hickory Plaintiffs' claim of a section 2000a violation should be denied.

### V. Conclusion

For the foregoing reasons, it is **HEREBY ORDERED** that Defendants' Motion to Dismiss is **PARTIALLY GRANTED.** The motion is **GRANTED** with respect to the Cary Plaintiffs' claims of violations of sections 1981 and 2000a, and is **DENIED** with respect to the Hickory Plaintiffs' claims of violations of sections 1981 and 2000a.

---

**16.** In their Complaint, the Hickory Plaintiffs state:

    45. The conduct complained of by defendants and their employees, agents and/or representatives as described above ... violated plaintiffs' right to the full and equal enjoyment of the public accommodations owned and operated by Defendants.

(Complaint ¶ 45.)

**17.** The allegations of the Hickory Plaintiffs are evocative of events more than three decades past in this country. Though the act of discrimination here differs from that most typical in the 1960's, the complete denial of service, the manner is quite similar. The basis for the discrimination was admitted, plainly and out in the open, to be the race of the Plaintiffs.