[Nos. A118499, A119121. First Dist., Div. Four. June 10, 2008.]

RON WILSON, Plaintiff and Appellant, v.
FRANCES MURILLO, Defendant and Respondent.

**COUNSEL**

Thomas E. Frankovich and Jennifer L. Steneberg for Plaintiff and Appellant.

Fox Rothschild, David F. Faustman and Cristina K. Olivella for Defendant and Respondent.

**OPINION**

**RUVOLO, P. J.—**

## I. INTRODUCTION

Ron Wilson, a disabled person, brought this lawsuit against Frances Murillo, doing business as Murillo's Restaurant (Murillo), alleging he was refused service and subjected to ridicule and harassment at the restaurant in retaliation for his efforts to ensure that the restaurant was accessible for use by the disabled under the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.[1]). In granting summary judgment for Murillo, the trial court found Wilson had failed to establish a prima facie case of unlawful retaliation because the retaliatory action allegedly taken by Murillo against Wilson was too trivial to be judicially cognizable. In a postjudgment order,

---

[1] Title III, the public accommodations provisions of the ADA, prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." (42 U.S.C. § 12182(a).) The broad prohibitions of the ADA are implemented by regulations which "require[] places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with the accessibility standards established by this part." (28 C.F.R. § 36.101 (2007).)

the trial court awarded Murillo her attorney fees under Civil Code section 55.[2] We reverse, concluding that the record presents material issues of disputed fact which could support a finding that Murillo's conduct was unlawful under the governing standards of the ADA. Therefore, the summary judgment entered in her favor should have been denied.

## II. FACTS AND PROCEDURAL HISTORY

In reviewing a grant of summary judgment, the law requires that the facts be reviewed in a light most favorable to the nonmoving party, in this case Wilson. Therefore, we must assume as true Wilson's version of all disputed facts presented in opposition to Murillo's motion. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*); *Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 999 [112 Cal.Rptr.2d 347] (*Birschtein*); *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 757, fn. 1 [134 Cal.Rptr.2d 138].) With this standard in mind, the declarations, deposition transcripts, footage from a security camera, and other evidence disclose the following facts, viewed in a light most favorable to Wilson.

Murillo owns and operates a restaurant, "Murillo's Mexican Food," located in Vacaville. Wilson is a disabled person who primarily relies on a wheelchair for mobility. He is self-described as "an activist for disabled persons seeking to make places of public accommodations abide by State and Federal access codes . . . ."[3] Wilson visited the restaurant over several years, but he was not a regular customer. Following each of his visits, he sent handwritten letters to Murillo identifying accessibility problems that he encountered. Murillo promptly responded to each of the letters.

---

[2] Civil Code section 55 authorizes any person who is aggrieved or potentially aggrieved by a violation of the right to access to accommodations, facilities, transportation, and housing to bring an action to enjoin the violation. The prevailing party in the action, Murillo below, is entitled to recover reasonable attorney fees.

[3] While Wilson obviously views himself as a champion of the disabled, he is condemned by Murillo as a serial litigant who exploits the ADA by filing lawsuits with "a clear intent to harass businesses and extort quick cash settlements . . . ." Wilson does not dispute that he has filed many ADA access lawsuits. Numerosity alone, however, is insufficient to show that his lawsuits are frivolous or harassing. One court has examined the contents of Wilson's filings and has made an express finding that his ADA claims are not frivolous and that he is not a vexatious litigant. "From all that appears, the number of lawsuits [Wilson] has filed does not reflect that he is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law." (*Wilson v. Pier I Imports (US), Inc.* (E.D.Cal. 2006) 411 F.Supp.2d 1196, 1200.) This difference in points of view being noted, we emphasize that Wilson's litigation history is immaterial to our resolution of this case.

Murillo ultimately spent in excess of $130,000 in bringing the restaurant into compliance with applicable law. Among other modifications, Murillo installed entrance ramps with detectable warning surfaces, Braille accessibility signage, a lowered bar section, accessible tables, automatic sensors for the faucets and paper towel dispensers in the men's and women's restrooms, and she twice repaved and restriped concrete in the parking lot. She also installed three power-assisted doors at all public entrances to the restaurant. It is undisputed that at all pertinent times, the restaurant was fully compliant with all federal and state disability access regulations.

On March 11, 2005, Wilson went to the restaurant to have lunch with a friend who also uses a wheelchair. They arrived at the restaurant and, instead of immediately asking for a table, stopped at the bar for a drink. They rolled up to the lower accessible section of the bar and, when the bartender came, they ordered a soda and a beer and asked to see a menu.

The bartender brought their drinks, a basket of chips, salsa, and two menus. A few minutes later Murillo walked up to them. Murillo admitted in her deposition that she was angry when she saw Wilson at her restaurant. She testified that she went to them and said " 'You guys are not welcome here, and you know that. . . .' And they asked me why, and I said, 'You're only here to harass me. You're not here for the food.' " In Wilson's declaration he recalls, "She asked us to leave, and we told her we would after we got our lunch and had finished eating it. Then she walked around to the back of the bar and as she came up to us again from the other side of the bar, she was holding up a sign which said, 'We reserve the right to refuse service to anyone.' "[4]

Another few minutes passed, and Wilson and his companion stayed at the bar drinking their drinks and eating chips. Murillo came up to them again and asked them to leave. They refused. Eventually, the bartender removed their chips and salsa from the bar and tried to remove Wilson's beer.[5] When asked why she was removing the chips and drinks, the bartender told Wilson that

---

[4] This court has reviewed the security camera footage submitted into evidence below. Murillo can clearly be seen holding up the sign a few feet from Wilson and his lunch companion.

[5] Murillo denies the bartender attempted to remove Wilson's chips and drink. As the trial court acknowledged during argument on summary judgment, the section of the security camera footage recording this portion of the incident is difficult to decipher. Wilson's counsel agreed: "I know. The video is not really clear. But when you look at it you can see at one point there is a basket of chips on the counter. Later in the video you can see the basket is no longer there." At the summary judgment stage, our role is not to determine the truth of the matter. Rather, our function is to determine whether a dispute about a material fact is genuine. (*Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 131 [40 Cal.Rptr.2d 249].) We find a genuine dispute of fact exists here.

the owner, Murillo, had told her not to serve them. Wilson told her he was going to finish his drink, took hold of the bottle, poured the contents into his glass, and gave her the empty bottle.

Murillo said she was calling the police to have them removed from the restaurant. In Murillo's deposition testimony she admitted she called the police "because they refused to leave [and] I just didn't want them in the premises period. I was upset."

At some point, Wilson and his companion were confronted by a man they believed to be an employee of the restaurant, who began taking photographs of them as they sat at the bar. While pointing his camera in their faces, this individual sarcastically told Wilson to "smile for the camera."

The police eventually came into the restaurant. In his deposition testimony, one of the responding police officers reported that when he arrived at the restaurant Murillo told him that she wanted two men in wheelchairs removed from her restaurant. Murillo explained to the officer that they "came in on a regular basis, took measurements; they were sending letters, demanding money and changes to the restaurant." The officers talked to Murillo and explained that there was no lawful reason they could make the two men leave. Wilson waited to see if the police officers were going to talk to them. They waited until the police left, and then they, too, left the restaurant.

When Wilson and his companion got to the parking lot they saw the police officers standing outside talking to each other. After obtaining the officers' names, they rolled over to their cars and were preparing to leave when the man who had taken the photographs inside the restaurant came out with a waitress. The waitress started taking photographs and taunting them just as the man had done inside the restaurant. At the same time, the man stood by the front door making an offensive gesture with his middle finger. Wilson and his companion eventually left the restaurant parking lot in separate vehicles.

On August 3, 2005, Wilson filed a complaint against Murillo seeking injunctive relief and damages for "retaliation" for "past activities in promoting the civil rights of persons with disabilities to have architectural barriers removed in places of public accommodation . . . ." Wilson alleged the following retaliatory acts: "[R]efusing to serve plaintiff RON WILSON at the bar, removing his food, demanding that plaintiff RON WILSON leave the restaurant, calling law enforcement to remove plaintiff from the premises at Murillo's Restaurant and the taking of photographs of plaintiff RON WILSON for no legitimate purpose . . . ." (Original capitalization.)

The complaint alleged a violation of the Unruh Civil Rights Act (Act) (Civ. Code, § 51 et seq.), which prohibits discrimination based on disability with respect to "accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever," and which incorporates the ADA, making ADA violations also violations of the Act (Civ. Code, § 51, subds. (b), (f)). The complaint also alleged a violation of California's Disabled Persons Act (Disabled Persons Act) (Civ. Code, § 54 et seq.). The Disabled Persons Act guarantees to persons with disabilities "the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, . . . public facilities, and other public places." (Civ. Code, § 54, subd. (a).) Like the Act, the Disabled Persons Act incorporates the ADA. (Civ. Code, § 54, subd. (c).)

Murillo filed a motion for summary judgment. The gist of Murillo's motion was that the retaliatory acts alleged by Wilson were too trivial to constitute the adverse retaliatory action required to state a prima facie case of retaliation.[6] Disputing the version of the incident presented by Wilson in opposition to the motion for summary judgment, Murillo argued that she "did have words with Wilson, but she did not refuse to serve Wilson and she did not eject him. After [Murillo's] brief conversation with Wilson, Wilson remained at the bar for approximately 26 minutes, finished his beer and chips, and then left the [r]estaurant on his own free will . . . . The evidence irrefutably demonstrates that Wilson did not suffer any actionable retaliation, and further did not suffer a 'distinct and palpable injury.' "[7] (Underscoring omitted.)

The trial court granted summary judgment, finding in a written opinion that "[i]f defendant or any of her employees had forcibly ejected Wilson from the premises, made physical threats against him, or called him disparaging names in front of the other patrons, such conduct could be actionable. Here, placing this event in context, all that is alleged is a mildly unpleasant incident, not rising to the level of necessary conduct for recovery under either statute." Appeal No. A118499 followed.

On the basis of the trial court's grant of summary judgment in Murillo's favor, she then filed a motion for attorney fees pursuant to Civil Code section 55, which was granted by the trial court. As the prevailing party, Murillo was

---

[6] As we will discuss in greater detail below, by incorporating the ADA, both the Act and the Disabled Persons Act prohibit retaliation or interference against any individual who exercises his or her rights under the ADA.

[7] As the trial court recognized in its written order, there was a triable issue of material fact as to whether on March 11, 2005, Murillo told Wilson he was not welcome in her restaurant and whether or not the bartender, at Murillo's direction, tried to take Wilson's chips, salsa and drink away. Consequently, at the summary judgment stage, it was improper for Murillo to assume that her version of the disputed facts was the correct one. (*Birschtein, supra*, 92 Cal.App.4th at p. 999, citing *Saelzler, supra*, 25 Cal.4th at p. 768.)

awarded $48,258 in attorney fees and $4,853 in costs. Appeal No. A119121 followed. Both appeals were consolidated for purposes of briefing and argument by order of this court on November 2, 2007.

## III. DISCUSSION

### A. Standard of Review

A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." (*Saelzler, supra*, 25 Cal.4th at p. 768.) The trial court does not weigh the evidence and inferences, but instead merely determines whether a reasonable trier of fact could find in favor of the party opposing the motion, and must deny the motion when there is some evidence that, if believed, would support judgment in favor of the nonmoving party. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145].) On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

### B. Wilson's Theories of Liability

■ In his complaint against Murillo, Wilson made allegations of retaliation for his actions in enforcing the accessibility provisions of the ADA in violation of the Act and the Disabled Persons Act. While Wilson did not make an explicit claim of retaliation under the ADA, as we have previously noted, violations under the ADA are expressly incorporated into the Act and the Disabled Persons Act. (Civ. Code, §§ 51, subd. (f), 54, subd. (c), 54.1, subd. (d).)

■ The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." (42 U.S.C. § 12203(a) (section 12203(a)).) In a separate subdivision, the ADA further renders it unlawful "to coerce, intimidate, threaten, or

interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter." (42 U.S.C. § 12203(b) (section 12203(b)).) In his complaint, Wilson asserted that Murillo violated both of these subsections on March 11, 2005, by "refusing to serve [him] at the bar, removing his food, demanding that [he] leave the restaurant, calling law enforcement to remove [him] from the premises and the taking of photographs of [him] for no legitimate purpose . . ." in retaliation for his activities in enforcing the ADA.

There are important distinctions between the rights protected under subdivision (a) and subdivision (b) of section 12203. (See generally Weber, *Workplace Harassment Claims Under the Americans with Disabilities Act: A New Interpretation* (2003) 14 Stan. L. & Pol'y Rev. 241.) A requisite component for establishing liability under section 12203(a) is to establish discrimination for opposing an act or practice made unlawful by the ADA. By contrast, section 12203(b) does not mention discrimination nor does it require that the plaintiff have opposed an act or practice that violates the ADA. Instead, section 12203(b) directly forbids coercion, intimidation, threats and interference with the exercise of protected rights under the ADA.

Because section 12203(a) (the antiretaliation provision) and section 12203(b) (the antiinterference provision) raise two distinct theories of liability, we proceed to discuss them independently. (See *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 714 [52 Cal.Rptr.2d 821]; *Ramsey v. City of Lake Elsinore* (1990) 220 Cal.App.3d 1530, 1544 [270 Cal.Rptr. 198] ["A defendant moving for summary judgment must disprove *all* possible causes of action or theories of recovery set out in a plaintiff's complaint before it is entitled to summary judgment."].)

### C. Liability for Retaliatory Adverse Action in a Public Accommodation Case

■ As noted, in section 12203(a), the antiretaliation provision, the ADA specifically prohibits discrimination because an individual has opposed any act or practice made unlawful by the ADA. To establish a prima facie case of retaliation under the ADA, Wilson must prove that (a) he was engaged in protected activity; (b) the alleged retaliator knew that he was involved in the protected activity; (c) an adverse decision or course of action was taken against him; and (d) a causal connection exists between the protected activity and the adverse action. (*Weixel v. Board of Educ. of City of New York* (2d Cir. 2002) 287 F.3d 138, 148; *Shotz v. City of Plantation, Fla.* (11th Cir. 2003)

344 F.3d 1161, 1180 (*Shotz*).) Although Wilson's burden in proving a prima facie case is light, summary judgment against him is appropriate if he fails to satisfy any one of the elements of a prima facie case. (*Zappa v. Wal-Mart Stores, Inc.* (M.D.Fla. 1998) 1 F.Supp.2d 1354, 1356.)

■ Once the plaintiff proves a prima facie case, courts apply the same burden-shifting analysis to retaliation claims as is employed in other discrimination cases. (See *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802–805 [36 L.Ed.2d 668, 93 S.Ct. 1817] (*McDonnell Douglas*); accord, *Kiel v. Select Artificials, Inc.* (8th Cir. 1999) 169 F.3d 1131, 1134–1135 [observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate].) After a prima facie case of retaliation is established, the burden is on the defendant to establish a legitimate reason for the adverse action, which the plaintiff may rebut by producing credible evidence of pretext. (*McDonnell Douglas, supra*, at pp. 802–805.)

The crucial issue that is determinative of Murillo's motion for summary judgment motion is whether Wilson presented sufficient evidence to satisfy the "adverse action" requirement for establishing a prima facie case of retaliation. Murillo asserted, and the trial court agreed, that the retaliatory conduct upon which Wilson based his complaint was, as a matter of law, not sufficiently adverse to state a prima facie case of retaliation.

The vast majority of courts which have examined the question of what conduct constitutes an "adverse action" have done so in the employment context. As the court recognized in *Bass v. Board of County Com'rs, Orange County, Fl.* (11th Cir. 2001) 256 F.3d 1095, in order for conduct to constitute an adverse employment action " ' "some threshold level of substantiality" ' " must be met. (*Id.* at p. 1118.) Otherwise, every "minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.' [Citation.]" (*Smart v. Ball State University* (7th Cir. 1996) 89 F.3d 437, 441; see *Davis v. Town of Lake Park, Fla.* (11th Cir. 2001) 245 F.3d 1232, 1238–1239 (*Davis*).)

Instead, in the employment context, the "adverse employment action" threshold is met when the employer's action "impact[s] the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." (*Davis, supra*, 245 F.3d at p. 1239.) In other words, a plaintiff must show that a reasonable person in the circumstances would have viewed it as "a *serious and material* change in the terms, conditions, or privileges of employment."

(*Ibid.*; see *Shotz, supra*, 344 F.3d at pp. 1181–1182.) Examples include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote. (*Thaddeus-X v. Blatter* (6th Cir. 1999) 175 F.3d 378, 396 (*Thaddeus-X*).)

At the other extreme, courts have found no adverse employment action where the complained-of conduct had no effect on the plaintiff's employment status. (See, e.g., *Davis, supra*, 245 F.3d at p. 1240 [negative job performance is not an adverse employment action where there was no economic injury]; *Flannery v. Trans World Airlines, Inc.* (8th Cir. 1998) 160 F.3d 425, 428 [shunning is not an adverse employment action where the plaintiff did not allege that the ostracism resulted in reduced salary, benefits, seniority, or responsibilities].)

Murillo seeks to import the standards used for determining an adverse retaliatory action in employment cases to public accommodations cases. She argues on appeal that, in order to establish a prima facie ADA retaliation claim, Wilson had to show "that the alleged retaliatory actions had a **'detrimental and substantial effect'** on the plaintiff." (Original boldface and underscoring.)

However, context is important. We believe the dissimilar nature of the relationship between an employer and an employee from that between a restaurant owner and patron militates against using an employment definition of "adverse action" for purposes of establishing a prima facie retaliation claim in a public accommodation setting. As one court has aptly noted, "the definition of adverse action is not static across contexts. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." (*Thaddeus-X, supra*, 175 F.3d at p. 398.)

As here, the court in *Shotz, supra*, 344 F.3d 1161, was called upon to define the type of conduct sufficiently adverse to establish a prima facie case of retaliation in a nonemployment context. In *Shotz*, the pivotal question was whether the public release of sensitive and highly personal information about a private individual who had reported a new community center's ADA violations constituted an adverse action in order to state a prima facie ADA retaliation claim. (§ 12203(a).)

As in the instant case, an argument was made in *Shotz* that the correct standard for determining whether an action is adverse should be borrowed

from employment cases and "that a press release of Shotz's most personal facts was not serious or material enough to be considered adverse for the purpose of demonstrating a prima facie case." (*Shotz, supra*, 344 F.3d at p. 1182.)

In examining the adverse action element of a prima facie case of retaliation under the ADA, the court rejected that argument, stating that "[c]learly, a plaintiff need not demonstrate an adverse *employment* action when establishing a prima facie case of retaliation in the public services or accommodations contexts of the ADA . . . ." (*Shotz, supra*, 344 F.3d at p. 1181.) In defining an adverse action, the *Shotz* court emphasized: "Indeed, not 'every unkind act' is sufficiently adverse. [Citation.] Rather, we analyze that sufficiency 'on a case-by-case basis, using both a subjective and an objective standard.' [Citation.]" (*Ibid.*) "As a general rule, '[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the . . . action in question as adverse.' [Citation.]" (*Ibid.*) The court further explained, "[W]hile conduct must be material to be adverse in this context, it need not be traumatic. [Citation.] If we set the bar too high, we run the risk of chilling legitimate opposition to unlawful and discriminatory practices, and 'could stifle [a person's] willingness to file charges of discrimination.' [Citation.]" (*Id.* at pp. 1182–1183.)

Utilizing this standard, the *Shotz* court rejected the defendants' argument that the public release of Shotz's personal information was not sufficiently adverse to establish a prima facie case of retaliation. The court stated: "[T]he breadth of the personal information allegedly released [went] beyond any legitimate bounds and [was] sufficient to establish a prima facie case of retaliation . . . . In this case, a reasonable citizen in Shotz's position would not only view the City's actions as adverse, but appalling as well, even if they were not motivated by retaliatory animus." (*Shotz, supra*, 344 F.3d at p. 1183, fn. omitted.)

We agree with the *Shotz* court that Wilson's subjective reaction to his interaction with Murillo at the restaurant alone is not exclusively controlling. Rather, the correct standard also requires that this negative reaction be objectively reasonable, analyzing his claim of retaliation on a fact-specific basis to determine whether a reasonable person in Wilson's position would believe that the conduct allegedly taken against him was materially adverse.

 We emphasize that the adversity must be material—it is not enough that the alleged adverse conduct poses some de minimis inconvenience or

embarrassment—the conduct must go beyond legitimate bounds. (See, e.g., *Higdon v. Jackson* (11th Cir. 2004) 393 F.3d 1211, 1218–1220 [in ADA retaliation claim against Department of Motor Vehicles (DMV) employees, court used the standard set out in *Shotz* to determine that conduct did not rise to the level of adverse action where DMV employee demonstrated rude behavior but went ahead and processed plaintiff's papers].) On the other hand, conduct "need not be traumatic" in order to qualify as materially adverse. (*Shotz, supra,* 344 F.3d at pp. 1182–1183.)

We believe Wilson's claims, if found true, are sufficient to allow a fact finder to conclude, employing both subjective and objective tests, that he was subjected to materially adverse acts of retaliation by Murillo. In reaching this conclusion, we are aware that courts have properly commented upon the fact that *all* persons have unpleasant experiences in restaurants and other places of public accommodation. (See, e.g., *Bobbitt by Bobbitt v. Rage Inc.* (W.D.N.C. 1998) 19 F.Supp.2d 512, 519–520 ["While [rude and/or bad service] is regrettable and frustrating, it is a phenomenon familiar to all who eat at restaurants."].) However, in viewing the factual record in a light most favorable to Wilson, the opponent of a summary judgment motion, we conclude the allegations concerning the treatment Wilson received from Murillo during his March 11, 2005 visit to her restaurant raise a triable issue of fact as to whether this conduct was materially adverse.

As set out by Wilson, "[b]eing told you are not welcome[,] . . . being asked to leave the premises, having food taken away while you are eating, having a sign held in front of your face which says that the owner has the right to refuse service to you, being subjected to harassment and ridicule by employees and/or other patrons of an establishment, and having the police summoned to escort you from the business, are definitely not actions which often take place at a restaurant . . . ." Moreover, Murillo essentially admitted in her deposition testimony that her decision to eject Wilson and his companion from the restaurant was motivated by Wilson's earlier ADA complaint, providing substantial factual support for Wilson's retaliation claim.

Limiting actionable adverse conduct to encompass only those cases where there is a forcible ejection from the premises, physical threats, or disparaging name calling in front of other patrons, as the trial court suggested, would be contrary to the mandate of the ADA, as incorporated into Wilson's claims under the Act and the Disabled Persons Act. Consequently, given the factual

record before it on Murillo's summary judgment motion, the trial court was presented with a triable issue of material fact for actionable retaliation under section 12203(a) that precluded granting summary judgment.

Our conclusion is reinforced by the administrative guidance issued by the Department of Justice to implement the public accommodation provisions of title III of the ADA. "As the agency directed by Congress to issue implementing regulations [citation], to render technical assistance explaining the responsibilities of covered individuals and institutions [citation], and to enforce Title III in court [citation], the [Justice] Department's views are entitled to deference. [Citation.]" (*Bragdon v. Abbott* (1998) 524 U.S. 624, 646 [141 L.Ed.2d 540, 118 S.Ct. 2196]; accord, *Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 524 [74 Cal.Rptr.2d 684].)

In the proceedings below, Wilson submitted text from section 3.6000 of the November 1993 edition of the United States Department of Justice's "ADA Title III Technical Assistance Manual." In pertinent part, it states that "[i]ndividuals who exercise their rights under the ADA, or assist others in exercising their rights, are protected from retaliation." The Department of Justice then sets out illustrative examples of how this rule is to be applied. We find one example particularly relevant: "A restaurant may not refuse to serve a customer because he or she filed an ADA complaint against the restaurant or against another public accommodation." Therefore, the Department of Justice also takes the position that, if a restaurant owner refuses to serve an individual who has filed an ADA complaint, adverse action has occurred.

### D. Liability for Interference, Coercion, and Intimidation in a Public Accommodation Setting

Turning to Wilson's claim under section 12203(b), this provision makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" any ADA-granted right. Wilson claims that the record shows a triable issue of fact under section 12203(b), because he was subjected to "threats, intimidation and interference with appellant's enjoyment of the services of [Murillo's] restaurant."

■ We emphasize that section 12203(a) and section 12203(b) create separate and distinct claims. The language in subdivision (b) is more accurately described as prohibiting harassment against those who are simply exercising their ADA rights, as opposed to subdivision (a), which prohibits retaliation. In this sense, subdivision (b) "forbids a broader range of conduct,

and it covers a wider range of motivations than mere retaliation for opposition to discrimination . . . ." (*Workplace Harassment Claims Under the Americans with Disabilities Act: A New Interpretation, supra,* 14 Stan. L. & Pol'y Rev. at p. 251.)

Once again, guidance can be found in the Code of Federal Regulations issued by the Department of Justice. Part 36.206 of the Code of Federal Regulations (28 C.F.R. § 36.206 (2007)) reiterates the conduct prohibited by 42 United States Code section 12203(b), and then directly applies that prohibition to the precise factual scenario shown by the evidence presented below. "(c) Illustrations of conduct prohibited by this section include, but are not limited to: [¶] . . . [¶] (2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation." (28 C.F.R. § 36.206(c)(2) (2007).)

As set out above, Wilson has produced sufficient evidence to establish a number of material adverse acts that were intentionally directed at him which interfered with his full and equal use of Murillo's restaurant, a place of public accommodation. As a consequence, Wilson has presented evidence to raise a triable issue of fact with respect to Murillo's liability under section 12203(b) as well.[8]

### E. Conclusion

We appreciate the rhetorical effectiveness with which Murillo argues that Wilson's allegations are trivial. She claims that his allegations that he was refused service at the restaurant and harassed are "completely fabricated" and that he is relying "on a few trivial events" to concoct a case. Pointing out that a prolific litigator such as Wilson "is by now not likely easily offended in such situations," she claims that "from an objective perspective" her alleged actions "were reasonably likely to do no more than annoy Wilson." Because Wilson, at best, suffered a "few petty slights," Murillo claims her actions cannot, as a matter of law, be found actionable. These arguments, however, are for the trier of fact's resolution. Here, we conclude only that, given the factual record before it on Murillo's summary judgment motion, the trial court was presented with triable issues of material fact that precluded granting the motion.

---

[8] In light of our reversal of the judgment, Murillo is not a prevailing party, and the award of attorney fees to her pursuant to Civil Code section 55 must also be reversed.

## IV. DISPOSITION

We reverse the judgment and the posttrial order awarding Murillo attorney fees. Costs on appeal are awarded to Wilson.

Reardon, J., and Sepulveda, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 27, 2008, S165257.