TRAVELERS CASUALTY AND
SURETY COMPANY OF
ILLINOIS, Plaintiff,

v.

RAGE ADMINISTRATIVE AND MARKETING SERVICES, INC., f/k/a Rage, Inc., Mid–Atlantic Pizza Huts, Inc., and Pizza Hut of Hickory No. 2, Inc., Defendants.

Civil Action No. 98–2243–KHV.

United States District Court,
D. Kansas.

Jan. 8, 1999.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, for plaintiff.

John J. Jurcyk Jr., Douglas M. Greenwald, McAnany, Van Cleave & Phillips, Kansas City, KS, for defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Travelers Casualty and Surety Company of Illinois seeks a declaratory judgment that it has no duty to defend or indemnify certain insureds in a civil action brought against them in the United States District Court for the Western District of North Carolina. The matter now comes before the Court on *Plaintiff's Motion For Judgment On The Pleadings And/Or For Summary Judgment* (Doc. # 19) filed September 28, 1998, and defendants' *Cross Motion For Summary Judgment* (Doc. # 25) filed November 9, 1998. For reasons stated more fully below, the Court finds that plaintiff's motion should be sustained and that defendants' motion should be overruled.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v.*

*Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to re-quire submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* at 251–52, 106 S.Ct. 2505.

### Undisputed Facts[1]

Rage Administrative and Marketing Services, Inc. ("Rage"), formerly known as Rage, Inc., is a Kansas corporation. Atlantic Pizza Huts, Inc. ("Pizza Hut") is a North Carolina corporation. Rage and Pizza Hut operate several Pizza Hut restaurants, including one in Cary, North Carolina.

Rage has a company-wide policy against racial discrimination in customer relations and public accommodation, and its employees are not authorized to discriminate against customers based on race or color. As part of its training regimen, Rage informs all new restaurant managers of the nondiscrimination policy and directs them to enforce it with all employees.

Travelers Casualty and Surety Company of Illinois ("Travelers") issued a commercial general liability policy which covered defendants' restaurant operations between June 30, 1996 and June 30, 1997. Travelers issued and delivered the policy in Kansas, and defendants paid premiums for the policy in Kansas. The relevant policy provisions provide as follows:

### SECTION I—COVERAGES
### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**
 a. We will pay those sums that the "insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. . . .

\*　　\*　　\*　　\*　　\*　　\*

---

1. The parties agree that most of the facts are uncontroverted, *see Stipulation* (Doc. # 17) filed September 3, 1998, and the disposition of this case turns on the interpretation of the commercial general liability policy issued by Travelers.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

2. **Exclusions.**

This Insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured."

\* \* \* \* \* \*

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \* \* \* \*

7. **Separation Of Insureds.**

. . . . this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each "insured" against whom claim is made or "suit" is brought.

\* \* \* \* \* \*

## SECTION V—DEFINITIONS

\* \* \* \* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these [at any time].

\* \* \* \* \* \*

9. "Occurrence" means [an] accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The policy's definition of "insured" includes both the named insured organization and "your employees . . . but only for acts within the scope of their employment by you."

The policy also contains a supplemental Personal and Advertising Injury Liability provision. That provision provides coverage for damages for " '[p]ersonal injury' caused by an offense arising out of your business," which the policy defines as injury, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. [Wrongful eviction];

d. Oral or written publication of material that slanders or libels a person or organization . . . ; or

e. Oral or written publication of material that violates a person's right of privacy.

The policy does not expressly cover or exclude coverage for claims of civil rights discrimination or public accommodation discrimination by clients, customers or business invitees.

On March 2, 1998, the so-called Bobbitt plaintiffs sued Rage and Pizza Hut in the United States District Court for the Western District of North Carolina, on account of events which occurred on November 23, 1996, at the Pizza Hut in Cary, North Carolina. In that suit the Bobbitt plaintiffs—who are African–American—claimed that because of their race, defendants had denied their right to make and enforce contracts and refused to provide equal treatment or access to a public accommodation in violation of 42 U.S.C. §§ 1981 and 2000a. More specifically, the Bobbitt plaintiffs alleged that a white waitress refused to serve their group, rudely ignored them and took orders from white customers who arrived after them. The Bobbitt plaintiffs alleged that after they received their pizzas, they complained to the manager about the lack of pizza sauce. The manager allegedly argued that the pizza had sufficient sauce and used his finger to lift up the cheese to prove his point.

The Bobbitt plaintiffs further alleged that Pizza Hut management had known about and accommodated the discriminatory attitudes of the waitress, and that the manager's conduct was within the scope of his employment. They also al-

leged that the discriminatory practices occurred under defendants' authority, control and supervision, and within the scope of the employees' employment. They further alleged that defendants "ratified" the waitress' conduct, in that (1) the manager was on notice that the waitress did not like to serve black people, and/or (2) defendants were aware of unlawful conduct by the manager of a Pizza Hut in Hickory, North Carolina, on March 3, 1995,[2] and (3) defendants failed to take remedial measures to educate, train or discipline their employees to prevent this incident. *Bobbitt, et. al. v. Rage, Inc., et. al,* Civil No. 5:98cv19–McK, *Complaint For Declaratory Judgment, Permanent Injunctive Relief, And Damages* (Doc. # 1) (W.D.N.C. filed March 2, 1998), ¶ 31 (*"Bobbitt Complaint"*). The Bobbitt plaintiffs finally alleged that "[t]hrough the actions of [their] employees, agents and/or representatives . . . defendants acted intentionally, maliciously, and with willful, callous, wanton and reckless disregard for plaintiffs' federally protected rights." *Id.* at ¶ 33.

The Bobbitt plaintiffs sought compensatory damages for their alleged injuries, which included "economic loss, humiliation, embarrassment, emotional distress, mental anguish, and a deprivation of rights to make and enforce contracts on the same basis as whites." *Id.* at ¶ 34. They further claimed that one named plaintiff was "extremely upset and humiliated." *Id.* at ¶ 28.

By letter dated February 6, 1998, Travelers denied coverage for the claims in the Bobbitt suit. It contended that the Bobbitt plaintiffs asserted no claim for bodily injury, personal injury or property damage that was caused by an occurrence under the policy; that the policy excluded coverage for intentional conduct; and that the Bobbitt plaintiffs made no claim for damages for personal injury or advertising injury under the policy.

By order dated July 27, 1998, a federal magistrate judge for the Western District of North Carolina sustained defendants' motion to dismiss the Bobbitt plaintiffs' claims under Rule 12(b)(6), Fed.R.Civ.P. Construing the complaint in a light most favorable to the Bobbitt plaintiffs, he held that the allegations failed to state a claim under Section 1981 because the denial of service did not constitute the denial of a right to make or enforce a contract. *Bobbitt v. Rage, Inc.,* 19 F.Supp.2d 512, 518 (W.D.N.C.1998).[3] He resolved the public accommodation claim on similar grounds, holding that the Bobbitt plaintiffs were not denied access to the restaurant, were not denied service, were never asked to leave, and in fact successfully ordered and received their dinner. *Id.* at 522.

The Bobbitt plaintiffs sought reconsideration under Rule 60(b), Fed.R.Civ.P., or in the alternative an order amending the judgment and allowing them to seek an immediate appeal under Rule 54(b) and 28 U.S.C. § 1292(b). On October 20, 1998, the magistrate judge denied the Bobbitt plaintiffs' motions.[4] According to defendants, unless the Bobbitt plaintiffs successfully pursue an appeal of that order of dismissal, the question of Travelers' duty to indemnify is not at issue; the only question in the present declaratory judgment action is whether Travelers owes

---

2. Additional plaintiffs (unrelated to the Bobbitt plaintiffs) asserted claims in the Bobbitt suit arising from the March 3, 1995, incident. Those claims are not at issue in the present declaratory judgment action and we do not address them.

3. The magistrate judge did not address the other two prongs of the prima facie case under Section 1981, membership in a racial minority and intent to discriminate by defendants. *Id.* n. 8.

4. The magistrate judge held that the Rule 60(b) motion was improper because entry of judgment had been premature. He denied the Rule 54(b) certification motion, holding that the Bobbitt plaintiffs had failed to show that harm would arise from delaying the appeal until completion of the case. Finally, he denied the Section 1292(b) motion for certification because the Bobbitt plaintiffs had failed to show a substantial basis for difference of opinion regarding a controlling question of law.

(and owed) a duty to defend them in the Bobbitt suit. Travelers does not disagree but simply argues that defendants have failed to demonstrate either a duty to defend or a duty to indemnify. Therefore, for purposes of the present motions, we only address Travelers' duty to defend.

### Analysis

Travelers asks the Court to determine as a matter of law that (1) the intentional racial discrimination alleged in the Bobbitt complaint is not an "occurrence" under the policy; (2) the Bobbitt complaint did not seek damages for "bodily injury" or "personal injury;" and (3) the Bobbitt complaint alleged conduct which was "expected or intended by the insured" and is therefore excluded from coverage. Defendants disagree that Travelers is entitled to a declaratory judgment on any of these points. Defendants argue that the Bobbitt complaint contains allegations of negligence, which constitutes an "occurrence"; that the mental harm alleged in the Bobbitt complaint falls within the policy definition of injury, or could have physical manifestations which do so; and that the allegation of negligence involves conduct which does not fall under the policy exclusion for "expected or intended" conduct.

### I. Does The Policy Cover The Conduct Alleged In The Bobbitt Complaint?

■■■■ Where, as here, a federal Court exercises diversity jurisdiction, it must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Kansas, the construction of a contract is governed by the law of the state in which the contract was made. *Simms v. Metropolitan Life Ins.*

*Co.*, 9 Kan.App.2d 640, 642, 685 P.2d 321, 324 (1984) (in Kansas lex loci contractus governs construction of contracts); *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F.Supp. 1375, 1382 (D.Kan.1997). Because the contract was made in Kansas, the Court looks to Kansas law in determining the scope of the insurance coverage.

■■■■ Travelers notes that Kansas courts determine coverage from the underlying theories of liability alleged. *See, e.g., Brumley v. Lee*, 265 Kan. 810, 814, 963 P.2d 1224, 1227 (1998) (citing *Upland Mut. Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974)); *Pink Cadillac Bar and Grill, Inc. v. United States Fidelity and Guar. Co.*, 22 Kan.App.2d 944, 950, 925 P.2d 452, 457 (1996) ("Kansas does not look to the underlying cause of the injury to determine coverage, but looks to the specific theory alleged.") (citation omitted). Defendants correctly respond, however, that under Kansas law, the insurer has a duty to defend if there is any potential for liability under a policy of insurance.[5] In *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 686, 512 P.2d 403, 407 (1973), the court held that the insurer must look beyond the effect of the pleadings and consider any facts brought to its attention or which it could reasonably discover in determining whether it has a duty to defend; if such facts give rise to a "potential of liability" under its policy, the insurer bears a duty to defend. *Accord Bankwest v. Fidelity & Deposit Co. of Maryland*, 63 F.3d 974, 978 (10th Cir.1995) (under Kansas law, insurer's duty to defend determined by allegations of underlying complaint and facts discoverable to insurer).

---

**5.** The insured must undertake a good-faith analysis of all information known to it or reasonably ascertainable by inquiry and investigation in order to determine the possibility of coverage. *See Johnson v. Studyvin*, 839 F.Supp. 1490, 1495 (D.Kan.1993) (under Kansas law insurer has duty to defend whenever there is possibility of coverage, even if remote); *American Motorists Ins. Co. v. General Host Corp.*, 946 F.2d 1489, 1490 (10th Cir.1991) (so long as insured can show non-frivolous possibility that claim may fall within coverage of insurance contract, insurer has duty to defend); *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 246, 865 P.2d 182, 188 (1993) (under Kansas code of civil procedure, insurer must look beyond effect of pleadings and consider any facts brought to its attention, or which it could reasonably discover, in determining whether it has duty to defend) (citation omitted); *accord United Wats, Inc.*, 971 F.Supp. at 1384.

■ Travelers denies any potential of liability and claims that the Bobbitt allegations fall wholly outside any coverage obligations, because the only theories at issue in *Bobbitt* require proof of intentional discrimination or discriminatory animus. *See, e.g., Fitzgerald v. Mountain States Tel. and Tel. Co.,* 68 F.3d 1257, 1262 (10th Cir.1995) (in Section 1981 respondeat superior action, employer responsible only for intentional wrongs of employees) (citing *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)); *Fisher v. Shamburg,* 624 F.2d 156, 159–161 (10th Cir.1980) (racially-motivated deprivations of public accommodation under Section 1985 fall under Thirteenth Amendment prohibitions of badges of slavery and require discriminatory animus). *See also Vaughner v. Pulito,* 804 F.2d 873, 877 (5th Cir.1986) (allegations related to racial discrimination under Fair Housing Act involve intentional conduct and do not trigger coverage or duty to defend). Moreover, Travelers notes, the Bobbitt plaintiffs sought punitive damages for "intentional and malicious acts" in violation of their federal civil rights. *Bobbitt Complaint,* at ¶ 35.

The policy provides in pertinent part that it applies to bodily injury and property damage "only if ... caused by an 'occurrence.'" The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident," but Kansas courts have adopted a generally accepted definition which means "an undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." *Harris v. Richards,* 254 Kan. 549, 553, 867 P.2d 325, 328

(1994) (citing *Gilliland v. Ash Grove Lime & Portland Cement Co.,* 104 Kan. 771, 773, 180 P. 793, 794 (1919)).

Travelers argues that racial discrimination cannot be construed as an "accident" because by definition, it is not an "undesigned" event. *See Farmers Alliance Mut. Ins. Co. v. Salazar,* 77 F.3d 1291, 1297 (10th Cir.1996) (holding under Oklahoma law that intentional murder is not "accident" under any common usage of term and therefore is not "occurrence" triggering liability insurance coverage). *See also Vaughner,* 804 F.2d at 876 (civil rights violations excluded from coverage by definition of "occurrence."). In support of its argument, Travelers cites *Golf Course Superintendents Ass'n of America v. Underwriters at Lloyd's, London,* 761 F.Supp. 1485 (D.Kan.1991), where the federal district court noted that disparate treatment claims—as opposed to disparate *impact* claims—are typically not covered by insurance policies which contain a standard definition of "occurrence." *Id.* at 1489–90 (claim of intentional retaliation against employee for filing suit under Section 1981 does not trigger coverage).[6]

■ Defendants acknowledge that the Bobbitt plaintiffs alleged intentional discrimination by defendants' employees and invoked vicarious liability/respondeat superior as a basis for liability. Defendants argue, however, that the Bobbitt plaintiffs also alleged negligent conduct, and that the potential of liability for negligence triggers a duty to defend the entire lawsuit. Specifically, defendants cite the allegations that they failed to take "remedial measures to educate, train or discipline their employees to prevent this incident from occurring," *Bobbitt Complaint* at ¶ 31, contending that such allegations are "most

---

6. Travelers also cites *Lapeka, Inc. v. Security Nat'l Ins. Co.,* 814 F.Supp. 1540, 1546 (D.Kan.1993), where an insured sought coverage for employment discrimination claims by former employees. The insuring agreement covered bodily injury caused by an "occurrence," which the policy defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury ... neither expected nor intended from the standpoint of the insured." *Id.* at 1546–47. The court held that a disparate impact claim could qualify as an "occurrence" under that definition and Travelers argues that by implication, it decided that a disparate treatment claim would not.

reasonably construed as assertions of negligence" because from defendants' perspective, the alleged failure to train, educate or counsel the waitress "was not intended to cause incidents of discriminatory treatment" and the alleged events of November 23, 1996 "were unexpected and undesigned." Accordingly, they argue that their alleged "negligence" falls within the policy coverage for accidents and triggers a duty to defend. *E.g., Spivey*, 254 Kan. at 246, 865 P.2d at 188 (complaint which alleges both negligent and intentional acts triggers duty to defend).

As the Court reads the Bobbitt complaint, however, it did not seek recovery on any theory of negligence. Defendants cite only one allegation of negligence, which in context reads as follows:

> The discriminatory practices described above were carried out (a) under the defendants' authority, control and supervision; and/or (b) within the scope of the employees' employment. In addition, Defendants *ratified* the conduct of the waitress Carla because (a) Carla's manager was on notice that Carla did not like to serve black people, and/or (b)

---

7. Like intentional discrimination on the basis of race, ratification cannot be viewed as "accidental" because by definition, it is not an "undesigned" event.

8. Our conclusion that the Bobbitt complaint did not seek recovery for negligence finds support in other language of the complaint. It explicitly alleged that defendants were aware that the waitress did not like to serve racial minorities and accommodated her racist views, *Bobbitt Complaint* at ¶ 27; that she and her manager were acting within the course and scope of their employment as employees, agents, and/or representatives of defendants, *id.* at ¶ 29; that defendants, "acting through their employees," refused to serve plaintiffs because of their race, *id.* at ¶ 30; that defendants undertook such action with "discriminatory animus" for the purpose of denying plaintiffs equal treatment on the basis of race, *id.;* and that through the actions of their employees, "defendants acted intentionally, maliciously, and with willful, callous, wanton and reckless disregard" for plaintiffs' rights, *id.* at ¶ 33. The complaint contained no language which even remotely sounds in negligence.

Defendants were aware of the unlawful conduct of the manager in the Hickory, North Carolina, Pizza Hut ... and (c) Defendants failed to take remedial measures to educate, train or discipline its employees to prevent this incident from happening.

*Bobbitt Complaint* at ¶ 31 (emphasis added). While the factual assertion that defendants "failed to take remedial measures" might sound in negligence in some contexts, here it does not; it merely constitutes a factual basis for the allegation that defendants ratified the conduct of the waitress.[7] Its apparent purpose is to reinforce the connection between the actions of the waitress and the liability of defendants under a theory of respondeat superior or vicarious liability.[8]

The theory of liability in the Bobbitt complaint was intentional discrimination on the basis of race in violation of 42 U.S.C. §§ 1981 and 2000a. Because the Bobbitt complaint contained no allegation of negligent or unintentional conduct against these defendants, they have failed to show a nonfrivolous possibility that a claim against them could fall within the

---

The Bobbitt complaint did contain an allegation, as part of plaintiffs' demand for punitive damages, that defendants acted "with callous and reckless disregard for plaintiffs' federally protected rights." *See Bobbitt Complaint* at ¶ 35. Arguably, this allegation invokes a level of scienter that falls short of intent to discriminate. *See United States v. Security Management Co.*, 96 F.3d 260, 268–69 (7th Cir.1996) ("taken in disregard" language reached acts of unintentional discrimination, given generally understood meaning of "disregard" as taking no notice of or overlooking). Kansas courts, however, appear to equate recklessness and intent. *Koster v. Matson*, 139 Kan. 124, 128, 30 P.2d 107, 110 (1934) (recklessness puts wrongdoer in same class with willful wrongdoer; recklessness amounting to utter disregard of consequences supplies specific intent); *see also Wiehe v. Kukal*, 225 Kan. 478, 483–84, 592 P.2d 860, 864–65 (1979). Accordingly the Court cannot view the allegation of "reckless disregard" as a claim for negligent or unintentional conduct.

coverage of the insurance contract. *E.g., American Motorists Ins. Co.*, 946 F.2d at 1490.

Defendants attempt to avoid this conclusion by arguing that if the waitress acted with racial animus, she violated their non-discrimination policy and acted contrary to their business interests and, because they could not have expected or intended such events, Travelers cannot escape its duty to defend. This argument may have superficial appeal, but it gains defendants nothing. The policy expressly excludes coverage for "bodily injury" or "property damage" that is "expected or intended from the standpoint of the 'insured,'" and it defines "insured" as both the named insureds and their employees.[9] For reasons further discussed below, if the waitress committed acts of intentional discrimination, the injury and damages which the Bobbitt plaintiffs have alleged would be excluded from coverage because they would necessarily be "expected or intended" from her standpoint. Regardless whether *defendants* expected or intended those injuries, the policy would exclude coverage.

Defendants also argue that Travelers has a duty to defend because the underlying suit "has been construed properly as a complaint about unsatisfactory service which may have been accidental." Defen-dants' argument, to the extent that the Court can make any sense of it, is without merit. The fact that the magistrate judge dismissed the Bobbitt suit for failure to state a claim does not establish that the theory of liability was negligence rather than intentional discrimination. Indeed, the absence of any reference to negligence in the order of dismissal indicates that the magistrate judge perceived no such theory of liability.

In summary, the only theories of liability in the Bobbitt complaint are that defendants denied the rights of the Bobbitt plaintiffs to make and enforce contracts, and to public accommodation, in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 2000a. Such theories of liability require intentional discrimination or discriminatory animus. As a matter of law, intentional racial discrimination does not constitute an "occurrence" under the terms of the policy. Accordingly, Travelers' motion for summary judgment on the issue of a covered "occurrence" must be sustained.

## II. Did The Bobbitt Plaintiffs Allege A "Bodily Injury" Under The Terms Of The Policy?

In the Bobbitt suit, plaintiffs alleged that they suffered "humiliation, embarrassment, emotional distress, and men-

---

9. The policy actually defines "insured" as the named insureds or "your employees ... but only for acts within the scope of their employment by you." The Court does not discuss the scope of employment issue because defendants do not argue that the waitress acted *outside the scope of her employment* if she engaged in intentional discrimination. Such an argument would be self-defeating, because it would defeat coverage under the policy. Also, it is not germane to defendants' liability under the Bobbitt complaint. Courts recognize respondeat superior liability for intentional acts of employees under Section 1981. *E.g., Fitzgerald*, 68 F.3d at 1262–63 (employer responsible for "those intentional wrongs of his employees that are committed in further-ance of the employment; the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong") (quoting *General Build-*

*ing Contractors Ass'n*, 458 U.S. at 392, 102 S.Ct. at 3150–51); *Flanagan v. Aaron E. Henry Com. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir.1989) (*General Building Contractors* "clearly implied that agency principles will apply if liability is to be imposed against a defendant under section 1981 for the acts of another"); *E.E.O.C. v. Gaddis*, 733 F.2d 1373, 1380 (10th Cir.1984) (employer potentially liable for punitive damages under Section 1981 where employer took part in intentional discrimination). *See also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2269, 141 L.Ed.2d 633 (1998) (in context of employer liability under Title VII, decisions made by employees with apparent authority while acting within scope of their employment to serve employer's business interests automatically attributable to employer).

tal anguish ." The policy covers "bodily injury," which it defines as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these [at any time]." Travelers argues that the Bobbitt plaintiffs did not allege a "bodily injury" which is covered by the policy and that it therefore has no duty to defend. Defendants respond that the complaint alleged "injuries relating to the mental health of the plaintiffs" and that the definition of "bodily injury" is ambiguous because it is unclear whether it covers "bodily injury" and *all* varieties of sickness and disease or whether it covers only bodily injury, bodily sickness and bodily disease. Defendants ask the Court to resolve this issue against the insurer and find that they are entitled to coverage.

Defendants further argue that Travelers has not determined the nature and extent of the mental anguish and emotional distress which the Bobbitt plaintiffs claimed to have suffered, nor has it ascertained whether their emotional injuries have had physical manifestations such as insomnia, anxiety or nervousness. Defendants argue that until Travelers can establish "absolutely that there was no sickness, disease, or physical manifestations of an emotional injury," it has a duty to defend.

Defendants' arguments are not persuasive. The policy definition of "bodily injury" is nearly identical to the one at issue in *Lapeka*, a discrimination case in which the court rejected a similar argument that claims for pain, humiliation and embarrassment constitute bodily injury. 814 F.Supp. at 1548 (citing non-Kansas cases); *see also Bowman v. Doherty*, 235 Kan. 870, 877, 686 P.2d 112, 119 (1984) (under Kansas law plaintiff cannot recover for emotional distress caused by defendant's negligence unless it is accompanied by or results in physical injury).[10] The Court agrees with that analysis, which disposes

of defendants' argument. The contention that the Bobbitt plaintiffs alleged injuries which might have physical manifestations in the future is mere speculation.

Defendants' argument that Travelers has a duty to defend until it can establish unequivocally that the Bobbitt plaintiffs suffered "no sickness, disease, or physical manifestations of an emotional injury" is also without merit. The record reflects that Travelers undertook an investigation. *See Complaint For Declaratory Judgment* (Doc. # 1) filed June 4, 1998, Ex. C. at 1 (letter from Travelers informing Rage of coverage denial). Travelers notified Rage that based on information which it had obtained from the Bobbitt plaintiffs' attorney, it determined that they made no claim for bodily injury. *Id.*, Ex. C. at 2. It also requested that Rage supply any additional information which could be pertinent to the coverage question. *Id.*, Ex. C. at 4. Defendants' attorney responded by letter, stating that mental and emotional anguish constitute bodily injury under North Carolina law. *Id.*, Ex. D. at 1. He provided no information which indicated the possibility of any physical manifestations.

The record contains no evidence that Travelers failed to undertake a good faith analysis of all information known to it or reasonably ascertainable by inquiry and investigation in order to determine the possibility of coverage for physical manifestations of injury. *Spruill Motors, Inc.*, 212 Kan. at 686, 512 P.2d at 407. Accordingly, we reject defendants' argument that Travelers has failed to determine whether the Bobbitt plaintiffs' emotional injuries have had or may have physical manifestations such as insomnia, anxiety or nervousness.

In the alternative, defendants note that under North Carolina law, mental and emotional anguish may constitute "bodily injury" under the policy, citing *Fieldcrest*

---

10. *Bowman* further noted, however, that the rule "does not apply where the injurious conduct is willful or wanton, or the defendant acts with intent to injure." *Id.* (citations omitted). *But see Maddy v. Vulcan Materials Co.*, 737 F.Supp. 1528, 1536 (D.Kan.1990)

(reconciling *Bowman* with other Kansas cases, and finding *Bowman* to be limited to its facts; *i.e.*, recovery of damages available for emotional distress in absence of physical injury in case of intentional tort of false imprisonment).

*Cannon, Inc. v. Fireman's Fund Ins. Co.,* 124 N.C.App. 232, 251, 477 S.E.2d 59, 71 (1996) ("courts of this jurisdiction have recognized the torts of negligent infliction of emotional distress and intentional infliction of emotional distress as actions for bodily injury.").[11] Defendants ask the Court to apply North Carolina law to the policy definition of "bodily injury" because Kansas has adopted an exception to the lex loci rule where the contract contravenes "the settled public policy of the state whose tribunal is invoked to enforce the contract."[12] *See Hartford Accident & Indem. Co. v. American Red Ball Transit Co.,* 262 Kan. 570, Syl. ¶ 2, 574–575, 938 P.2d 1281, 1283, 1285–86, *cert. denied,* —— U.S. ——, 118 S.Ct. 372, 139 L.Ed.2d 290 (1997). This argument is without merit. In *Hartford,* the Kansas Supreme Court relied on *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.,* 245 Kan. 258, 777 P.2d 1259 (1989), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990), which recognized an exception to the lex loci rule where application of the law of the place where the contract was made would violate the law of the tribunal. That issue does not exist in this case be-

cause the contract of insurance was made in Kansas, which also provides the tribunal. The Court declines to recognize an exception to the lex loci rule in this case.

Defendants have failed to demonstrate that the Bobbitt plaintiffs alleged a "bodily injury" under the terms of the policy. Accordingly, Travelers' motion for summary judgment under the "bodily injury" provision must be sustained.

### III. Does The Conduct Alleged In The Bobbitt Plaintiff Fall Within The Exclusionary Clause?

 Under Kansas law, an insured is deemed to have intended the natural and probable consequences of its act. *See Pendergraft v. Commercial Standard Fire & Marine Co.,* 342 F.2d 427 (10th Cir. 1965). Travelers claims that the conduct alleged in the Bobbitt complaint is excluded from coverage because it was "expected or intended from the standpoint of the insured." It claims that a result is deemed to have been intended when it stems from consequences that a person knows are certain or substantially certain to result from his act, *see Spivey,* 254 Kan. at 249–50, 865 P.2d at 190(applying Missouri law).[13] In

---

**11.** The Court expresses no opinion whether the courts of North Carolina would reach a different result on these facts under North Carolina law. In *Fieldcrest Cannon, Inc.,* the court held that where a claim for negligent or intentional infliction of emotional distress results in "severe emotional distress," such injury may constitute "bodily injury" for purposes of insurance coverage. It further held that the term "severe emotional distress" means any "emotional or mental disorder," such as, for example, "neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so" and "[m]ere temporary fright, disappointment or regret will not suffice." 124 N.C.App. at 252, 477 S.E.2d at 72. The Bobbitt plaintiffs did not claim any severe and disabling emotional or mental condition such as neurosis, psychosis, chronic depression or phobia.

**12.** While defendants enumerate various "public policy" considerations why the Court should apply North Carolina law, they cite no

authority for the proposition that the considerations are in fact public policies of Kansas.

**13.** Travelers also argues that for purposes of the intentional acts exclusion, the intent as well as the conduct of defendants' employees must be imputed to defendants, citing *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 340–41 (5th Cir.1996) (under Texas law, when agent intends or expects his conduct to result in injury, his intent and knowledge are imputed to principal for purposes of determining whether there was "occurrence" under policy). Courts have reached different conclusions on this issue. *E.g., U.S. Fidelity & Guar. Co. v. Open Sesame Child Care Ctr.,* 819 F.Supp. 756, 760 (N.D.Ill.1993) (negligent hiring claim is covered "occurrence" even if employee's conduct was intentional, if employer did not expect or intend such conduct); *Lutheran Benevolent Ins. Co. v. National Catholic Risk Retention Group, Inc.,* 939 F.Supp. 1506, 1510–13 (N.D.Okla.1995) (under Oklahoma law, where employer did not expect or intend to cause injury, claim for negligent retention of employee was covered

the Bobbitt suit, plaintiffs alleged that they suffered "humiliation, embarrassment, emotional distress, and mental anguish." Such consequences are ones that a person knows are certain or substantially certain to result from acts of intentional discrimination. If the waitress engaged in such conduct, she is deemed to have intended the natural and probable consequences of her act. The policy excludes coverage for "bodily injury" or "property damage" that is "expected or intended from the standpoint of the 'insured,'" and it defines "insured" as both the named insureds and their employees. Therefore, if the waitress committed acts of intentional discrimination, the injury and damages which the Bobbitt plaintiffs have alleged would be excluded from coverage because they would necessarily be "expected or intended" from her standpoint. This is true regardless whether defendants expected or intended those injuries.[14]

## IV. Does Travelers Have A Duty To Defend Under The "Personal And Advertising Injury Liability" Provision Of The Policy?

 Defendants argue that Travelers has a duty to defend under the supplemental Personal and Advertising Injury Liability provision. That provision provides coverage for damages for personal injury, which the policy defines as:

an injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. [Wrongful eviction];

d. Oral or written publication of material that slanders or libels a person or organization . . .; or

e. Oral or written publication of material that violates a person's right of privacy.

Noting the five specific offenses listed in the provision, defendants argue that the allegations in Bobbitt complaint "appear to fall within the type of personal injuries claims" covered under that provision, in that the specific offenses are "in the nature of intentional torts." Accordingly, defendants argue that claims related to intentional misconduct are claims caused by such an offense and should be covered by that provision. Defendants also note that this provision contains no intentional acts exclusion and no exclusion for civil rights, discrimination or public accommodation claims by defendants' customers or business invitees.

In response, Travelers argues that neither the Bobbitt plaintiffs' complaint nor any defendant in this case has alleged personal injury involving any of the five specific offenses listed in the supplemental Personal and Advertising Injury Liability provision. Travelers therefore concludes that it has no duty to defend under the provision. The Court agrees. Defen-

"occurrence" under policy). The Court need not decide this issue because even if this case involved a covered "occurrence," the policy in this case provides that injury and damages which are expected and intended by the employee, acting within the scope of his or her employment, are excluded from coverage, even if the employer did not expect or intend such consequences.

14. Defendants claim that the intentional acts exclusion does not apply if *their* conduct was unintentional, even if the *waitress* acted intentionally, because the policy contained a separation of insureds provision. The Court disagrees. Defendants' argument might be well

placed if the separation of insureds provision stated that the insurance applies "[a]s if each Insured were the only Insured." What it says is quite different. The provision states that the insurance applies "[a]s if each *Named* Insured were the only *Named* Insured" (emphasis added). The *"Named* Insureds" in this case are Rage and Pizza Hut. This case does not involve any coverage issues between Rage and Pizza Hut, so this provision is not helpful to defendants' cause. To the extent that the separation of insureds provision obligates Travelers to apply coverage separately to each "insured" against whom claim is made or suit is brought, the provision likewise has no bearing on the issues in this case.

dants' argument is without merit and can be summarily rejected.

## V. Defendants' Remaining Arguments

### A. The Policy Contains No Specific Exclusion For Customer Claims For Civil Rights Violations

 Defendants note that the policy contains broad coverage provisions, but contains no specific exclusion for "customer claims arising from unsatisfactory service, arising from allegedly discriminatory treatment of customers by servers, or for claims of violations of civil rights or public accommodation laws." They argue that had Travelers intended to exclude such claims from coverage, it had the duty to clearly and explicitly set forth such exclusions. The authorities which defendants apparently cite, *e.g., Lyons Fed. Sav. and Loan v. St. Paul Fire and Marine Ins. Co.,* 863 F.Supp. 1441 (D.Kan.1994), lend no support to their argument.[15] Their argument has no merit: Travelers had no duty to specifically exclude coverage of claims like those alleged in the Bobbitt complaint.

### B. Attorneys Fees And Expenses

In addition to declaratory relief, defendants seek reimbursement of fees and litigation expenses which they have incurred in defending the Bobbitt suit, along with fees and expenses incurred in the present action. Because of our determination that Travelers had no duty to defend or indemnify, defendants are not entitled to such relief. *Farm Bureau Mut. Ins. Co. v. Kurtenbach,* 265 Kan. 465, 961 P.2d 53 (1998).

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion For Judgment On The* *Pleadings And/Or For Summary Judgment* (Doc. # 19) filed September 28, 1998, be and hereby is **SUSTAINED.**

**IT IS HEREBY FURTHER ORDERED** that defendants' *Cross Motion For Summary Judgment* (Doc. # 25) filed November 9, 1998, be and hereby is **OVERRULED.**

---

**15.** In *Lyons* the court noted that "exceptions, limitations, and exclusions to insuring agreements require a narrow construction...." *id.* at 1446, meaning that "exclusions limit coverage created by insuring clauses, and the insurer has a duty to clearly define those limitations." *Id. See also United Servs. Auto. Ass'n v. Morgan,* 23 Kan.App.2d 987, 992, 939 P.2d 959 (1997). These authorities do not support the proposition that Travelers was obligated to include in defendants' policy a specific exclusion for civil rights lawsuits brought against them by customers. On the contrary, cases such as *Lyons* merely state the rule that an insurer has a duty to define in clear and explicit terms any exclusions to coverage, and that courts must interpret such exclusions narrowly. That rule has no application where, as here, defendants identify no exclusion which the Court need interpret.