**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ERA FRANCHISE SYSTEMS, INC.,
successor in interest to Electronic
Realty Associates, L.P., and Electronic
Realty Associates, Inc.,

      Plaintiff-Appellant,

v.

NORTHERN INSURANCE
COMPANY OF NEW YORK,

      Defendant-Appellee.

No. 99-3022
(D. Kan.)
(D.Ct. No. 97-2592-GTV)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BALDOCK, BRORBY**, and **LUCERO**, Circuit Judges.

_____

      After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is

therefore ordered submitted without oral argument.

---

      [*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

This appeal involves a declaratory judgment action brought by ERA Franchise Systems, Inc. (ERA), successor in interest to Electronic Realty Associates, L.P. and to Electronic Realty Associates, Inc., Plaintiff-Appellant. ERA sought a determination that Northern Insurance Company of New York (Northern), Defendant-Appellee, breached its contract with ERA by refusing to provide ERA a defense pursuant to a commercial general liability policy issued by Northern, for two lawsuits filed against ERA in California state court. Both ERA and Northern moved for summary judgment. The district court sustained Northern's motion for summary judgment and denied ERA's cross-motion for summary judgment, finding the policy excluded coverage for the underlying lawsuits against ERA. The district court also denied ERA's motion for attorney's fees. The district court acquired diversity jurisdiction under 28 U.S.C. § 1332 (a) and (c). We exercise jurisdiction under 28 U.S.C.§ 1291, and affirm.

I. Facts

This action flows from Northern's refusal to defend ERA in two underlying suits against ERA filed in California state court. The first suit was filed on July 10, 1995, by Claude Bernasconi and fourteen other plaintiffs. The plaintiffs in the Bernasconi action filed suit against ERA, The Real Estate Center of Santa Cruz (REC), Ralph Bargetto, William Bryant, and Arnoldo Gil-Osorio. REC is an

-2-

independently owned ERA franchisee in Santa Cruz, California. Mr. Bargetto and Mr. Bryant are real estate brokers. Mr. Gil-Osorio was an independent contractor selling real estate for REC. He also gave his clients financial and investment advise. The complaint alleged that from 1989 to 1993, the plaintiffs invested funds through Mr. Gil-Osorio which he misappropriated. Mr. Gil-Osorio filed for bankruptcy, and the plaintiffs pursued the other defendants under respondeat superior and agency theories. The plaintiffs' ten-count complaint included allegations of general and professional negligence; breach of fiduciary duty; constructive fraud; violations of California's business, financial and professional code; and ERA's liability under agency principles. The complaint also included an allegation of negligent infliction of emotional distress associated with the loss of the plaintiffs' funds.

As a result of Mr. Gil-Osorio's alleged misrepresentations and the defendants' negligence, the plaintiffs claimed they suffered financial losses including "enjoyment of life and property and purchasing power," and suffered "anxiety, worry, and mental and emotional distress." The plaintiffs further alleged they "may have suffered, or will suffer, additional damages of which they are presently unaware, and will amend their complaint when same are discovered."

In relation to the negligent infliction of emotional distress allegation, the plaintiffs claimed:

> As an actual and proximate result of Defendants' negligent conduct, Plaintiffs, and each of them, have suffered, and continue to suffer, anxiety, worry, stress, loss of sleep, humiliation, and other severe emotional distress, entitling Plaintiffs to recover general damages in an amount to be shown according to proof.

In September 1995, ERA asked Northern to defend it in the Bernasconi lawsuit, pursuant to the commercial general liability coverage contained in an insurance policy issued by Northern. Northern subsequently denied coverage for that claim, citing several policy provisions, and encouraging ERA to contact Northern if it had any further information bearing on coverage. ERA did not forward any additional information to Northern. Northern was not made aware that the plaintiffs claimed they had suffered "emotional distress injuries, including loss of sleep, worry, anxiety, and embarrassment," in their answers to their interrogatories filed after Northern denied ERA's claim.

On February 16, 1996, a second lawsuit was filed against the same defendants by Judith McCarrick and other additional plaintiffs. Because the allegations and causes of action in the McCarrick complaint were almost identical to those in the Bernasconi complaint, the lawsuits were consolidated for discovery and trial. ERA never advised Northern of the McCarrick action, and ERA made

no request for coverage under the Northern policy for that suit. ERA was dismissed as a defendant in the underlying consolidated case, and subsequently filed the declaratory action at issue in this appeal.

On appeal, ERA claims Northern had a duty arising from the insurance policy to provide it a defense in the underlying litigation. ERA contends the district court should have granted its motion for summary judgment, improperly granted summary judgment in favor of Northern, and erred by denying its motion for attorney's fees pursuant to K.S.A. § 40-256.

II. Cross-Motions for Summary Judgment

We review the district court's grant of summary judgment *de novo*, applying the same legal standards used by that court. *Charter Canyon Treatment Center v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir.1998). Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law. *Id.*; *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691-92 (10th Cir. 1981); Fed. R. Civ. P. 56(c). "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that

filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998).

When a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). The district court applied Kansas law because the insurance contract was issued in Kansas. In Kansas, the law of the state where the contract was made applies to cases involving interpretation of a contract. *Commercial Union Ins. Co. v. John Massman Contracting Co*., 713 F. Supp. 1403, 1404-05 (D. Kan. 1989) (citing *Simms v. Metropolitan Life Ins. Co*., 685 P.2d 321, 324 (Kan. Ct. App. 1984)). Neither of the parties dispute the application of Kansas insurance law.

A. Denial of Coverage/ Duty to Defend

ERA contends Northern had a duty to defend it in the underlying lawsuit because the alleged damages came within the policy's liability coverage.

Under Kansas law, the duty to defend is broader than the duty to indemnify.

*American Motorists Ins. Co. v. General Host Corp*. 946 F.2d 1489, 1490 (10th Cir. 1991). An insurer may have the duty to defend its insured even though it ultimately may not have an obligation to indemnify the insured. *Id. See also MGM, Inc. v. Liberty Mut. Ins. Co*., 855 P.2d 77, 79-80 (Kan. 1993). The insured has the burden of proving the claim of loss arising from the underlying lawsuit was of the type covered under the policy. *Baugher v. Hartford Fire Ins*. Co., 522 P.2d 401, 409 (Kan. 1974). The duty to defend arises if the insured can show any non-frivolous possibility that the claim in the underlying case falls within the insurance contract. *General Host*, 946 F.2d at 1490 (citing *Patrons Mut. Ins. Ass'n v. Harmon*, 732 P.2d 741, 744 (Kan. 1987)). *See also Spruill Motors, Inc. v. Universal Underwriters Ins. Co*., 512 P.2d 403, 407 (Kan. 1973).

In determining whether it has a duty to defend, the insurer must look beyond the pleadings. It must perform a good-faith analysis of all the information known to the insured and all the information it could have reasonably ascertained through inquiry and investigation in determining whether the underlying plaintiffs have made any claim that falls within the scope of the coverage. *Spivey v. Safeco Ins. Co*., 865 P.2d 182, 188 (Kan. 1993); *Harmon*, 732 P.2d at 744; *Spruill*, 512 P.2d at 407. If these facts "give rise to a potential of liability under the policy, the insurer bears a duty to defend." *Spruill*, 512 P.2d at 407 (quotation marks and

citation omitted).  However, where there is no allegation in the underlying action that would bring the action within the protection afforded by the insurance policy, no potential of liability exists and no duty to defend is imposed on the insurer. *Spruill* , 512 P.2d at 406 (the insurer has no duty to defend if the action brought is "wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured.").

In determining whether the underlying claims arguably fall within the scope of coverage, we must interpret the language contained in the Northern insurance policy.  The interpretation and construction of an insurance policy is a question of law to be determined by the court; therefore, we review the district court's construction of the contract    *de novo* , applying Kansas law.    *See First Fin. Ins. Co. v. Bugg* , 962 P.2d 515, 519 (Kan. 1998).

In the commercial general liability coverage section of the policy issued to ERA, Northern agreed to defend any suit seeking damages "because of 'bodily injury' or 'property damage' to which this insurance applies."  The coverage section provides the insurance "applies to 'bodily injury' and 'property damage' only if ... [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence'

that takes place in the 'coverage territory ....'" Under the policy, the term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Bodily injury" is defined as "bodily injury, sickness or disease." "Property damage" is defined as:

      a.      Physical injury to tangible property, including all resulting loss of use of that property ... or

      b.      Loss of use of tangible property that is not physically injured....

The policy specifically excludes "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

ERA contends the district court misinterpreted the above language in the policy and erred by determining: (1) the term "occurrence" was unambiguous; (2) the underlying allegations of injury were not caused by an "accident" and were therefore not the result of "occurrences" covered by the policy; (3) the phrase "bodily injury" was unambiguous; (4) the assertions of sleeplessness were not "bodily injuries" covered by the policy; (5) the underlying plaintiffs asserted only economic losses which were not covered under the policy as "property damage"; and (6) the claims were excluded under the Designated Work Exclusion provision in the policy.

Ambiguous policy terms are to be construed against the insurer and in favor of the insured. *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992). However, the court must not create an ambiguity, requiring an interpretation favorable to the insured, when no ambiguity exists. *Id.* at 459. "The test to determine whether an insurance policy is ambiguous is what a reasonably prudent insured would understand the language to mean." *Bush v. Shoemaker-Beal*, 987 P.2d 1103, 1105 (Kan. Ct. App.1999). *See also Raymer*, 840 P.2d at 459 ("To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language.") "When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made." *Raymer*, 840 P.2d at 459. The policy is to be construed according to the contractual terms used. These terms are to be taken in their ordinary, plain, and popular sense. *Bush*, 987 P.2d at 1105.

## 1. Occurrence

ERA first argues Northern should have provided a defense in the underlying lawsuit because Mr. Gil-Osorio's actions amounted to an "accident" constituting an "occurrence" when examined from ERA's point of view. We need not address the arguments concerning the district court's interpretation of the

term "occurrence" because we conclude the alleged "occurrence" did not cause "bodily injury" or "property damage" as those terms are defined in the policy. Thus, even if Mr. Gil-Osorio's actions could be considered "occurrences" under the policy, Northern had no duty to defend the underlying suit.

### 2. Bodily injury

The Bernasconi and McCarrick lawsuits contained identical claims for negligent infliction of emotional distress, including an assertion that plaintiffs suffered sleeplessness as a result of the defendants' negligence. ERA contends the definition of the phrase "bodily injury" is ambiguous because it is unclear whether the phrase "bodily" modifies the terms "sickness" and "disease" in that definition. Due to this alleged ambiguity, ERA argues we should construe the policy liberally to include sleeplessness as a form of "sickness" covered by the policy.

We are not persuaded by ERA's argument that the phrase "bodily injury" is ambiguous. The authority cited by ERA in support of its contention that the phrase "bodily injury" is ambiguous represents a minority position that has been

widely criticized. [1]   Although the Kansas courts have not specifically addressed

this issue, the majority of courts have held the phrase "bodily injury" when

defined as "bodily injury [or harm], sickness or disease" is unambiguous, and

refers only to physical injuries.      *See  Lapeka, Inc. v. Security Nat'l Ins. Co    .*, 814

F.Supp. 1540, 1548-49 (D. Kan. 1993) (citing numerous cases from other

jurisdictions holding the term "bodily injury" does not include mental distress or

emotional suffering);   *Leiendecker* , 962 S.W. 2d at 453 (listing numerous cases

---

[1]  In support of this argument, ERA cites *Lanigan v. Snowden*, 938 S.W. 2d 330 (Mo. Ct. App. 1997).  The *Lanigan* court held the phrase "bodily injury" was ambiguous when defined as in the present case, because the term "bodily" could be construed to modify "sickness" and "disease" or it could be construed as not modifying those terms. *Id.* at 332.  ERA also cites *Lavanant v. General Accident Ins. Co. of Am*., 595 N.E. 2d 819 (N.Y. Ct. App. 1992), in support of its contention that the phrase "bodily injury" is ambiguous.  The *Lavanant* court reached a similar conclusion, interpreting the same policy definition of bodily injury as ambiguous because the terms "sickness" and "disease" enlarge the phrase "bodily injury" and "to the average reader, may include mental as well as physical sickness and disease."  595 N.E. 2d at 822.  The *Lanigan* decision was sharply criticized by the Missouri Court of Appeals Eastern District in *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W. 2d 446 (Mo. Ct. App. 1998), where the court pointed out that *Lanigan* and *Lavanant* are in the minority and noted "the overwhelming majority of jurisdictions which have considered the issue hold that 'bodily injury' standing alone or defined in a policy as 'bodily injury [or harm], sickness or disease' is unambiguous and encompasses only physical harm."  *Id*. at 452 (citing numerous cases).  The court declined to apply the *Lavanant* and *Lanigan* analysis to an attack on the clarity of the phrase "bodily injury" and held the proper construction of the definitional phrase would apply the term "bodily" to "sickness" and "disease."  *Id*. at 453-54 (listing cases where courts have specifically held that "bodily" modifies "sickness" and "disease").  *See also Knapp v. Eagle Property Management Corp*., 54 F.3d 1272, 1284 (7th Cir. 1995) (declining to follow the analysis contained in *Lavanant*, "we believe that the most natural reading of 'bodily injury, sickness, or disease' indicates that 'bodily' modifies all three terms.").

holding the phrase "bodily injury" is unambiguous when defined as it is in the present case); *Travelers Cas. & Surety Co. of Ill. v. Rage Admin. & Mktg. Serv., Inc*., 42 F. Supp. 2d 1159, 1168 (D. Kan. 1999). Furthermore, the majority of courts which have addressed the issue, have held the term "bodily" modifies the terms "sickness" and "disease." *See, eg., Leiendecker*, 962 S.W. 2d at 453; *Rage*, 42 F. Supp. 2d at 1168 (rejecting the insured's argument that the phrase "bodily injury" is ambiguous because "it is unclear whether it covers 'bodily injury' and all varieties of sickness and disease or whether it covers only bodily injury, bodily sickness and bodily disease.") ; *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co*., 726 P.2d 439, 443 (Wash. 1986) (en banc); *Chatton v. National Union Fire Ins. Co. of Pittsburgh*, 13 Cal. Rptr.2d 318, 323-24 (Cal. Ct. App. 1992); *Commercial Union Ins. Co. v. Image Control Property Management, Inc*., 918 F.Supp. 1165, 1170 (N.D. Ill. 1996) ("Under a plain and ordinary reading of the definition, 'bodily' modifies each term: 'injury,' 'sickness,' and 'disease.'"); *Knapp*, 54 F.3d at 1284.

We agree with the majority of courts and conclude the phrase "bodily injury" standing alone or defined as "bodily injury, sickness or disease" is unambiguous and extends coverage to physical harm only. The majority view that the term "bodily" modifies the terms "sickness" and "disease" is the more logical

-13-

interpretation. Had Northern intended "bodily injury" to encompass mental sicknesses or diseases, it could have defined "bodily injury" as any "sickness, disease or bodily injury," or specifically included mental disease or sickness in its definition of bodily injury. *See Rage*, 42 F. Supp. 2d at 1168-69 (rejecting the insured's argument that the phrase "bodily injury' is ambiguous because "it is unclear whether it covers 'bodily injury' and all varieties of sickness and disease or whether it covers only bodily injury, bodily sickness and bodily disease," and concluding the insurer had no duty to defend a claim against the insured where the underlying plaintiff asserted emotional injuries which might have had "physical manifestations" of "insomnia, anxiety or nervousness").

In support of its argument that "sleeplessness" should be considered a "sickness" covered by the policy at issue, ERA cites an old Kansas case defining sickness as "any affection of the body which deprives it temporarily of the power to fulfil its usual functions. It has been held to include insanity." *Kansas v. Douglas*, 260 P. 655, 657 (Kan. 1927). This was a case defining "sickness" in the context of a criminal prosecution for practicing medicine without a license. *Id*. at 656-57. Kansas courts have not addressed whether "sleeplessness" can be considered a sickness to the body in the insurance contract context.

We have found only one court that has addressed the issue of whether sleeplessness is a "bodily injury" in the context of an insurance policy. In *SL Indus., Inc. v. American Motorists Ins. Co.*, 607 A.2d 1266 (N.J. 1992), the court determined the phrase "bodily injury" was unambiguous because the underlying plaintiffs had not claimed any physical manifestations of their alleged emotional injuries. *Id*. at 1275. Comparing the physical manifestations of emotional injuries asserted in its companion case, *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1261 (N.J. 1992), the court rejected the claim that sleeplessness was a "bodily injury" and stated:

> In evaluating whether sleeplessness is an emotional or physical condition, we conclude that it is, at base, emotional in nature. To designate sleeplessness a physical injury would be tantamount to conceding that emotional and physical injuries are indistinguishable. In contrast, the headaches, stomach pains, nausea, body pains, and medically-diagnosed "undue amount of physical complaints" that resulted from emotional distress in our companion case, *Voorhees*, do fall on the side of physical injuries.

*SL Indus.*, 607 A.2d at 1273.

We agree with the reasoning of the New Jersey Supreme Court, and conclude the allegation of sleeplessness did not amount to an injury to the body sufficient to trigger Northern's duty to defend. Although sleeplessness may affect the body, it is usually considered an aspect of mental suffering. It is not ordinarily considered a physical injury to the body or a sickness of the body.

-15-

Applying the popular meaning of the term "bodily" we conclude the plaintiffs did not allege any bodily injury or sickness in their complaint sufficient to trigger the duty to defend. [2]

### 3.  Property Damage

ERA also claims the underlying plaintiffs alleged "property damage" as it is defined under the policy, therefore imposing a duty to defend.  We disagree.

The commercial general liability coverage policy in question defines "property damage" as:

a.      Physical injury to tangible property, including all resulting loss of use of that property ... or

b.      Loss of use of tangible property that is not physically injured....

In their complaints, the Bernasconi and McCarrick plaintiffs claimed damages for economic losses arising out of their dealings with Mr. Gil-Osorio,

---

[2] In so holding, we recognize Kansas courts have determined physical symptoms of emotional distress such as insomnia, headaches and general physical upset are not sufficient to state a cause of action for negligent infliction of emotional distress. *See Reynolds v. Highland Manor, Inc.*, 954 P.2d 11, 14 (Kan. Ct. App. 1998).  However, we are unpersuaded by Northern's argument that we should incorporate the reasoning of these cases into our interpretation of insurance law. *See SL Indus.*, 607 A.2d at 1274 (noting the distinction between the level of bodily injury required to trigger insurance coverage and that required to sustain a claim for emotional distress under tort law).

including "additional loans and other expenses incurred as a result of the financial losses ... lost income, opportunities, interest, enjoyment of life and property and purchasing power." ERA argues the plaintiffs' loss of enjoyment of property allegation could be construed to be a loss of the use of their property sufficient to trigger Northern's duty to defend the underlying lawsuit. ERA further argues the plaintiffs' allegation that they were forced to sell their homes as a result of the actions taken by Mr. Gil-Osorio and the negligence of the other defendants, was tantamount to an assertion of loss of real tangible property, triggering Northern's duty to defend.

Kansas state courts have not addressed the issue of whether purely economic losses can constitute property damage as it is defined in this policy. However, most courts which have addressed this issue agree that mere economic loss does not constitute property damage. *See, e.g., State Farm Fire & Cas. Co. v. Brewer*, 914 F.Supp. 140, 142 (S.D.Miss. 1996) (diminishment of value to home infested with termites due to fraud and/or misrepresentations by the real estate agent were economic losses and not "property damage" covered by the insurance contract); *American States Ins. Co. v. Martin*, 662 So.2d 245, 246-249 (Ala. 1995) (loss of investments due to unsafe investment of plaintiffs' funds by real estate agent was not "property damage" where the physical parcels of land

mortgaged were not damaged). We fail to see how the plaintiffs' losses were anything but purely economic. We also do not find support in the plaintiffs' interrogatory answers for ERA's contention that the underlying plaintiffs were forced to sell their homes as a result of the defendants' negligence. Because the plaintiffs in the underlying suits claimed only economic damage, under the policy, no coverage existed for those claims. [3]

B. Failure to Investigate

ERA further argues Northern failed in its duty to fully investigate the plaintiffs' claims. In their complaints, the plaintiffs asserted they "may have suffered, or will suffer, additional damages of which they are presently unaware, and will amend their complaint when same are discovered." ERA contends this assertion should have put Northern on notice that the plaintiffs' emotional distress might have led to more physical manifestations, and faults Northern for failing to inquire further. ERA also argues the investigation conducted by Northern's adjuster was insufficient because he was aware that interrogatories had been sent to the underlying plaintiffs, but failed to review the plaintiffs' responses prior to

---

[3] Because we have determined ERA failed to meet its burden of showing the underlying loss was of the type covered by its policy with Northern, we need not address the district court's alternative holding that the claims were excluded under the Designated Work clause of the policy.

denying coverage. ERA contends the answers to the interrogatories by the underlying plaintiffs regarding the alleged forced sale of their homes and their sleeplessness as the result of the defendants' negligence would have alerted the investigator to the possibility of coverage.

We conclude Northern undertook a good-faith analysis of all the information known or reasonably ascertainable by inquiry or investigation before denying coverage. *See Spruill* , 512 P.2d at 407. The assertion that the plaintiffs' emotional injuries might have resulted in physical symptoms is purely speculative. *See Rage* , 42 F. Supp.2d at 1168 (rejecting a similar argument). Any failure to investigate the identical claims asserted in the McCarrick suit was due to ERA's failure to inform Northern of the instigation of that suit. Furthermore, even if Northern had requested the interrogatories from the Bernasconi plaintiffs, as discussed above, the assertions of sleeplessness and property damage were insufficient to trigger the duty to defend.

III. Attorney's Fees

ERA argues it is entitled to attorney's fees pursuant to K.S.A. § 40-256. K.S.A. § 40-256 states, in pertinent part, as follows:

> [I]n all actions hereafter commenced, in which judgment is rendered against any insurance company ... if it appear[s] from the evidence

that such company ... has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs ....

Because we have determined Northern had no duty to defend ERA, K.S.A. § 40-256 is inapplicable and ERA is not entitled to attorney's fees. *Girrens v. Farm Bureau Mut. Ins. Co.*, 715 P.2d 389, 397 (Kan. 1986).

The judgment of the district court is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge